UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PETE DETTORI,

                              Plaintiff.

                    - against -

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

                             Defendant.
------------------------------------------------------------------------X

**CIVIL COMPLAINT**

Case Number: 22-cv-6442

**JURY TRIAL DEMANDED**

Plaintiff, Pete Dettori, by his attorneys, Law Office of Caner Demirayak, Esq., P.C., complaining of the defendant, respectfully alleges as follows:

**Preliminary Statement**

1.     Plaintiff brings this civil rights action arising from the defendant's discrimination on the basis of age, harassment, retaliation, and creation of a hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq*, the New York State Human Rights Law ("NYSHRL"), NY Exec. 290 *et seq.*, and the Suffolk County Human Rights Law ("SCHRL"), Suffolk Cty. 528-1 *et seq*. Plaintiff's claims arise from his wrongful and discriminatory termination on June 24, 2021.

2.     Plaintiff seeks compensatory and punitive damages from the defendant, declaratory relief, injunctive relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

**Jurisdiction**

3.     This action is brought pursuant to 29 U.S.C. 621.

1

4. As such jurisdiction of this Court is founded upon 28 U.S.C. 1331 and 1367.

5. Plaintiff exhausted all administrative remedies prior to commencement of this action by timely filing a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on or about December 14, 2021 and receiving a Notice of Right to Sue letter on July 29, 2022. *See* Exhibit "1."

6. Plaintiff's claims under the NYSHRL have also been preserved as the Division of Human Rights administratively dismissed the charge in light of the EEOC's issuance of a Right to Sue letter.

## Venue

7. Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C. 1391(b), as such district in the district in which the claims herein arose and because defendant conducts business in such district.

## Parties

8. Plaintiff, Pete Dettori is a 61-year-old man who was employed by the Defendant from July 28, 1986 until his termination on or about June 24, 2021. Plaintiff was initially hired as a claims interview clerk.

9. In February 1988 plaintiff was promoted to a level 1 examiner in the continuing unit.

10. In November 1990 plaintiff was promoted to a level 2 examiner in the continuing unit.

11. In 1994 plaintiff was promoted to a level 3 examiner in the continuing unit. Plaintiff was 33 years of age at the time.

12. In 2011 plaintiff's overall annual performance did not meet the minimum requirements but no adverse actions were taken against plaintiff.

13. In 2013 plaintiff's overall annual performance did not meet the minimum requirements but no adverse actions were taken against plaintiff.

14. Plaintiff was one of the most senior employees with 34 years of time at the time of his termination. He sustained a serious injury to his wrist in 2020. However, his performance ratings were not adjusted for his time out of work.

15. Immediately prior to his termination, he was denied a job application for a lower position, which would have resulted in a termination. Crucially, 12 persons were hired for the lower position, 10 of whom were under the age of 40. As such, immediately prior to termination, the defendant statistically favored younger employees by a whopping 83 percent. The only other employee who was not selected was actually looking for a promotion up several grades of pay, rendering her status inapplicable to plaintiff. Moreover, the three other employees who withdrew from selection were also seeking demotions from higher grades and were apparently of an older age.

16. It is clear that the plaintiff's age had a direct nexus to the decision to wholly discriminate against him and was a major factor in the refusal to give him the demoted position and terminate him. It is clear the interviewer of the lower position did not appreciate the plaintiff's old war stories of working for the company of 34 years.

17. Consistently the documentation from defendant shows it deemed plaintiff's age as a factor in his undesirable nature as an employee in someone who "did not want to change," or "was stuck in his ways," yet still met productivity goals. Plaintiff even received a recommendation from his then supervisor for the demoted position.

18. Furthermore, it was made clear in the application that plaintiff "was out of the office for an extended period of time and has approximately two months of results." Yet, his attendance was deemed satisfactory over 12 months. Thus, it is clear plaintiff was set up and was denied the demotion (the last way to save his job) because of his age and then terminated because of his age. Defendant would have this court believe that plaintiff should have been excited and happy to interview for a demotion, and that his lack of enthusiasm was a reason for not selecting him, as opposed to selecting 83 percent under the age of 40.

19. Six months after the plaintiff's termination, defendant reposted the job offering and employed another batch of younger employees versus older employees. This is preposterous and the mere statistical difference creates a *prima facie* case of discrimination on account of age which defendant will not be able to rebut. This is in addition to the detailed factual allegations of age discrimination herein.

20. Plaintiff was an employee within the meaning of the ADEA, NYSHRL and SCHRL.

21. Defendant, Government Employees Insurance Company ("GEICO"), is a domestic insurance company authorized to conduct insurance business in the State of New York. GEICO primarily conducts business at its New York headquarters at 750 Woodbury Road, Woodbury, New York.

22. At all relevant times, GEICO had more than fifty (50) employees.

23. At all relevant times, GEICO was an employer within the meaning of the ADEA, NYSHRL and SCHRL.

**Statement of Facts**

24. The intentional age discrimination against plaintiff began discreetly in 2018.

25. In October or November 2018 GEICO changed the audit criteria for performance requirements. Since now only 4 areas were being audited, an unsatisfactory audit on one point would result in a 25% downgrade of the file. But, the file must maintain an 85% grade to pass. Thus, GEICO had set up a performance evaluation criteria that required perfection as any single downgrade would always result in a score no greater than 75%.

26. Plaintiff was marked as not satisfactory on three files as being late on diary. However, the files were not late. The goals required plaintiff to enter a file every 30 days. Specifically, plaintiff was falsely noted as having a file late from September 30 to October 30, 2018. Plaintiff was 57 years of age at the time when he was falsely noted to have been late by one day (30 versus 31 days).

27. Plaintiff brought this to the attention of his superiors but his complaints were disregarded. Plaintiff was advised that the days are counted from the first day plaintiff accesses a file, and as such the wrong audit would not be changed.

28. The following month, in November 2018, plaintiff went to manager Kathy Asmus and asked her to look at the three audits described above. Plaintiff asked the manager, if you were in a file on September 30, 2018 and next in file on October 30, 2018, how can it be considered 31 days? She kept sidestepping the question and asked plaintiff why would I do that? She then changes the subject and says plaintiff should have put in the diary for 25 days and not 30. Kathy stated she did not agree with plaintiff and decided to keep the audits the same.

29. The manager did not appreciate the conversation with plaintiff and as such, within the days after the discussion, she began to send plaintiff notices and messages on random files with

comments that I was late on several files. It was clear that immediately after our discussion she began to target me and overly scrutinize my files. These were not considered official audits and could not affect my performance directly as far as I knew. However, after my termination I believe this was the start of intentional age discrimination, or continuation thereafter after those first three incorrect audits.

30. At the end of 2018 plaintiff received his annual performance ratings which were satisfactory and well over 3.6. Which includes, production, audits, phone audits and other criteria. Plaintiff did well in every audited area.

31. In January 2019 after plaintiff received his annual performance review as discussed above, a meeting was held with Kathy Asmus and Justin Koonz.

32. Plaintiff was advised during that meeting that he was going to be demoted from examiner level 3 in the continuing unit to a telephone adjuster 2, based on plaintiff's audit performance for the year of 2018 being 2.64 and below the required 3. In doing so they ignored the overall performance or exceptional categories and picked one category that was low and not the overall rating which was still a 3.6. This was the first time in 33 years that a single category was used for performance reviews instead of the overall rating. It was also 3/100 of a percentage off of the requirement for that audit category. It is clear that this demotion was discriminatory.

33. Plaintiff walked into the director's office the following day and stated he should not be demoted to a telephone adjuster, but for a negotiation position. The director stated he believed plaintiff was not successful in 2018 because he talks too much. After this conversation a negotiation position was given to two employees under the age of 40, despite the director's claim that negotiation was not in the budget.

6

34. The demotion from continuing unit level 3 to telephone adjuster level 2 was a demotion of 2 levels from grade 66 to grade 64. This was equivalent to a reduction in salary of $8,000 annually. At that time plaintiff was also the longest tenured litigation based examiner, which status plaintiff lost with the demotion.

35. At the same time of the demotion plaintiff was placed on a warning. The warning advised that if plaintiff did not meet goals in 6 months that disciplinary action may be taken for improper reserving. The warning was based on four specific file audits.

36. When plaintiff was assigned the demoted position, he was haphazardly assigned files which were impossible to close or resolve within the allotted time. As such, plaintiff did not meet the required goals in January, February, March, April, May and June 2021 as there was not enough files that were primed and ready to be resolved within the monthly allotted time.

37. However, plaintiff was not formally demoted until May 2019, without any reason. Each day plaintiff worked after the January 2019 meeting, plaintiff was extremely stressed and distressed as it was not clear when plaintiff would actually be demoted.

38. After those five months, Justin Koonz finally came to plaintiff and advised plaintiff to report to a training class for TA2 for two (2) weeks, known as post school. They did not let plaintiff shadow a TA2.

39. When assigned to TA2 plaintiff's supervisor was Ryan Morosky. Plaintiff told him he planned on coming out in TA2 with an overall audit of 5 so that he could post for the next available level 1 CU position.

40. The duties of a TA2 are to protect an insured from litigation by efficiently and rapidly resolving claims for the proper value before a lawsuit is filed. However, the supervisor is

the only person who is permitted to provide line level TA2s with settlement authority. As such, without the authority, goals could not be met.

41. Plaintiff was stripped of any settlement authority. The majority of TA2s had $10,000 per file authority. Prior to my demotion plaintiff had $40,000 settlement authority per file. So at this stage plaintiff's performance was completely at the discretion of management's provision of settlement authority.

42. While working as a TA2 with Morosky plaintiff was never provided with any settlement authority, despite many files being ripe and appropriate for settlement.

43. Plaintiff's ratings were decreased at the whim of management each month: in the first month as a TA2 plaintiff was rated a 5, in the second month a 4, in the third month a 2.9, in the fourth month a 2.2 and in the fifth month a 1.1.

44. Plaintiff did not receive an official performance evaluation or appraisal at the end of 2019 and into January 2020. Instead plaintiff was advised he was being placed on a personal improvement plan with specific goals to reach.

45. Plaintiff was advised he would be removed from the position and possibly terminated if he did not meet the goals.

46. During the meeting about the personal improvement plan, plaintiff asked for authority to resolve or settle cases, which was again denied.

47. One week after being place on the personal improvement plan, plaintiff fell while removing the Christmas lights from his house on a 9-foot ladder, causing him to fall nine feet onto his left wrist. The injury disabled plaintiff from typing. Plaintiff was required to receive a surgical repair which he could not receive during the pandemic. Eventually plaintiff received the surgery on June 12, 2020.

48. Due to the injuries, plaintiff was caused to be out on sick leave from January 11, 2020 until November 2020. Plaintiff was on Family Medical Leave during this time and was paid full salary for 6 months and then went on short term disability and was only issued half pay.

49. When plaintiff returned to work he was sent to two weeks of post school virtually. While in post school plaintiff received items in my Outlook inbox.

50. Plaintiff was advised his desk and job was given away. As such, he would have to handle new cases as a desk would be built for him of a set of cases

51. Crucially, although plaintiff had been out of work for 11 months, the personal improvement place would still be in place and not modified.

52. Defendant inundated plaintiff with files. In those two weeks plaintiff was assigned 160 files and they were all files that could not be resolved or settled quickly or easily. But plaintiff was only given 4 weeks to meet the monthly goals. Although GEICO now provided me with $7,500 settlement authority, none of these files were valued at that low amount. The goal was to close 55 monthly features on files. I was only able to achieve 14 features. The types of files and way in which they were assigned, made it impossible for me to meet the goals.

53. In January 2021 a meeting was held with plaintiff's superiors. During the meeting plaintiff was told that I failed to meet the requirements of the PIP and that he would be placed on a warning, although only 2 months of work had been factored in. Additionally, for the second year in a row plaintiff did not receive an annual performance review from the company.

54. As such, plaintiff took it upon himself to create his own self performance review and his superiors advised they was perplexed. Plaintiff advised it was unfair to rate him so low on only 2 months of work and not allowing him time to build the desk after his return. The superior stated that you always blame the supervisor but it's never your fault is it Pete?!

55. During this meeting plaintiff was put on a final warning and was not given step goals to meet to remove the warning.

56. In January and February 2021 plaintiff began to work 12-14 hours per day without overtime as he was fearful of being terminated. Plaintiff begged him for settlement authority and his supervisor always deflected him. As a result plaintiff could not meet the goals. No audits or numbers were given to plaintiff for those months.

57. After plaintiff received the final warning, during a conversation with Morosky he told plaintiff to call the manager for the policy service unit for an easier position. After contacting that manager plaintiff did not hear back from them. Morosky then advised plaintiff they did not feel plaintiff would be a good fit for their department. Plaintiff was then told to post for the claims service representative position, which was a significant demotion to grade 60.

58. Plaintiff posted for the demoted position and was given an interview. Plaintiff was denied the job. Plaintiff was told that they could not hire me because in response to the question of what plaintiff's greatest weakness was he responded that as a result of his injury he could not type as fast as he would like but that he is working on it. There were 35 positions to fill in that position at the time. The company filled all positions and then six weeks later the positions were posted for openings again. I was not hired because of my age. I believe that the average age of those hired were below the age of 40.

59. In fact, GEICO admitted in his submission to the Human Rights Division that it in fact hired 83% of applicants under the age of 40. Specifically, of 12 selected applications, 10 were under the age of 40 and 2 were older than 40. In the applicant database it is clear that plaintiff was the most senior employee and one of few who was seeking a demotion. A notation provided that "Pete was out of the office for an extended period of time and has approximately 2 months of

10

results." The only other applicant that was not hired was seeking a *promotion* up 4 grades, rendering her status inapplicable to plaintiff. Moreover, the three applicants that withdrew were seeking a demotion from a higher grade and were of an older age.

60. These is also a discrepancy between the reasons why GEICO did not hire plaintiff for the demoted position.

61. After the denial, plaintiff was not audited on any files starting in March 2021.

62. In March 2021 plaintiff was told his manager was being changed to Angela Booth. Plaintiff learned at that time that on one file Booth had authorized settlement on the file but that Morosky still did not approve it. Plaintiff was then reassigned from supervisor Morosky to Matt Dwyer in April 2021.

63. While working with Dwyer plaintiff was finally getting the support he needed and the authority he needed to resolve cases. Plaintiff also felt that he respected the work he was doing.

64. Plaintiff was then told that his time ran out a week before he was terminated during a WebEx meeting with Dwyer and Booth. Plaintiff was told his employment was under review as performance goals were not being met. Dwyer agrees he was working hard and that things were turning around. For that week plaintiff met with Dwyer every day and he felt that his employment should be safe as Dwyer supported his work.

65. On June 24, 2021 at 11:30 a.m., during a WebEx meeting with Dwyer and Booth plaintiff was told that the company has decided to separate employment. GEICO conceded at the Human Rights Division that this was in fact the adverse action of termination and not voluntary retirement. This was clearly a termination or a forced involuntary resignation. Plaintiff never filed retirement papers and never asked to retire. Plaintiff would have worked until the age of 65 if he was not terminated.

66. It is clear that GEICO set plaintiff up on a pre-text by having Angela Booth authorizing settlement for which Morosky never authorized. Under the appearance of an inability to get along with Morosky plaintiff was reassigned to another supervisor a few months before his termination. This was all scripted to make it seem there was no discriminatory intent to terminate plaintiff.

67. The current average age of employees in the continuing unit is in the low to mid-30s. Plaintiff knows of 5 or 6 other employees who were above the age of 55 who were either demoted or terminated on the basis of their age as described herein under pretextual reasons masked beyond performance goals which were unachievable.

68. Plaintiff lost his medical and dental benefits as a result of the termination. Additionally, because the pension reduced the collectable benefits for every year you draw from it before the age of 65, plaintiff was forced to take the buy out and draw from his 401k plan to be able to earn less than 2/3 of my pay prior to termination. This was because of being terminated at 60 years old, plaintiff's pension amount was precipitously decreased even with the buyout, forcing plaintiff to draw from the 401k to be able to survive without employment.

69. Plaintiff's age was the but for reason for the termination of his employment all masked in secret by pre-textual reasons.

## AS AND FOR A FIRST CAUSE OF ACTION
## Age Discrimination in Violation of the Age Discrimination in Employment Act

70. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 69 with the same force and effect as if fully set forth herein.

71. The ADEA provides that it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. 623(a)(1).

72. Defendant GEICO has engaged in a widespread pattern and practice of violating the ADEA, as detailed in this well pleaded complaint, including discriminating against Plaintiff by demoting him, denying him an internal position, and terminating him on the basis of age and changing Plaintiff's terms and conditions of employment prior to termination based on his age.

73. Plaintiff hereby provides his written consent to be a party to his action as an employee of defendant GEICO.

74. At all times relevant to these claims, Plaintiff was employed by the defendant within the meaning of the ADEA.

75. GEICO acted knowingly and willfully in their violations of the ADEA.

76. As such, plaintiff is entitled to compensatory damages in amount of at least one million five hundred thousand dollars ($1,500,000), and punitive damages in an amount of at least five hundred thousand dollars ($500,000).

**AS AND FOR A SECOND CAUSE OF ACTION**
**Age Discrimination in Violation of the New York State Human Rights Law**

77. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 76 with the same force and effect as if fully set forth herein.

78. Defendant GEICO violated the NYSHRL by demoting, refusing to hire plaintiff for an internal position and terminating plaintiff on the basis of his age, and altering the Plaintiff's terms and conditions of employment to be less favorable due to plaintiff's age.

79. At all times relevant herein, Plaintiff was employed by GEICO within the meaning of the NYSHRL.

80. The Defendant acted knowingly and willfully in violation of the NYSHRL.

### AS AND FOR A THIRD CAUSE OF ACTION
### Age Discrimination in Violation of the Suffolk County Human Rights Law

81. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 80 with the same force and effect as if fully set forth herein.

82. Defendant GEICO violated the SCHRL by demoting, refusing to hire plaintiff for an internal position and terminating plaintiff on the basis of his age, and altering the Plaintiff's terms and conditions of employment to be less favorable due to plaintiff's age.

83. At all times relevant herein, Plaintiff was employed by GEICO within the meaning of the SCHRL.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

I. Compensatory damages in an amount to be determined by a jury of at least one million five hundred thousand dollars ($1,500,000);

II. Punitive damages in an amount to be determined by a jury of at least five hundred thousand dollars ($500,000);

III. A declaratory judgment that the practices complained of herein are unlawful under the ADEA, NYSHRL and SCHRL;

IV. An injunction against defendant GEICO preventing it from engaging in the unlawful practices and policies set forth herein;

V. An award of back pay, front pay and attorney's fees;

VI.     An award of liquidated damages;

VII.     Costs, interest and attorney's fees; and

VIII.     Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

                                THE LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York  
       October 24, 2022

                                _____/s/_____  
                                Caner Demirayak, Esq.  
                                300 Cadman Plaza West  
                                One Pierrepont Plaza, 12th Floor  
                                Brooklyn, New York 11201  
                                718-344-6048  
                                caner@canerlawoffice.com

Exhibit "1"

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

# DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**Issued On: 07/29/2022**
Charge No: 520-2022-02360

**To:** Mr. Caner Demirayak Esq.
c/o Mr. Pete Dettori
300 Cadman Plaza West 12th Floor
Brooklyn, NY 11201

EEOC Representative and email:   Christiana Doriety, Federal Investigator
Christiana.Doriety@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2022-02360.

On behalf of the Commission,

Digitally Signed By: Judy Keenan
07/29/2022

Judy Keenan,
District Director

*Please retain this notice for your records.*

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 520-2022-02360 to the District Director at Judy Keenan, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.