**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Pete Dettori,<br><br>Plaintiff,<br><br>-v-<br><br>Government Employees Insurance Company,<br><br>Defendant. | 2:22-cv-06442<br>(NJC) (LGD) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

In this action, Plaintiff Pete Dettori brings claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 §§ 621–634, and the New York State Human Rights Law ("NYSHRL"), NY Exec. §§ 290–301 against Defendant Government Employees Insurance Company ("GEICO"). (Compl. ¶¶ 70–80, ECF No. 1.)[1] The Complaint alleges that GEICO discriminated against Dettori on the basis of his age by failing to hire him for two different positions in the company and by ultimately terminating his employment.

Before the Court is GEICO's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Mot., ECF No. 70-1.) For the reasons set forth below, summary judgment is granted to GEICO on Dettori's ADEA claims. Because no federal claims remain in this case, under 28 U.S.C. § 1367(c), this Court declines to exercise

[1] The Complaint also brought claims under the Suffolk County Human Rights Law ("SCHRL"), Suffolk Cty. 528-1, which Dettori later voluntarily withdrew. (*See* Compl. ¶¶ 81–83; ECF No. 38 at 1.)

supplemental jurisdiction over Dettori's NYSHRL claims, and these claims are therefore dismissed without prejudice.

## JURISDICTION

This Court has subject matter jurisdiction over the ADEA claims, which raise a federal question, under 28 U.S.C. § 1331. (Compl. ¶¶ 70–80.) To the extent that any federal claim survives summary judgment, this Court may exercise supplemental jurisdiction over the NYSHRL claims under 28 U.S.C. § 1367(a) because these state claims arise from the same facts as the federal claims and are part of the same case or controversy.

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the Complaint alleges that a substantial part of the events that gave rise to Dettori's claims occurred in this District. (*See* Compl. ¶¶ 7, 21 (alleging that GEICO "is a domestic insurance company authorized to conduct insurance business in the State of New York" and "primarily conducts business at its New York headquarters at 750 Woodbury Road, Woodbury, New York").)

## FACTUAL BACKGROUND

### I. Dettori's Early Employment History at GEICO

Dettori began working at GEICO in 1986 as a Claims Interview Clerk. (Dettori Tr. at 6, ECF Nos. 39-1, 43-2.) At the time, he was around 25 years old. (*Id*. at 19.) From 1986 to 1994, he received a number of promotions—first, to the position of Customer Service Representative ("CSR"), then to the position of Telephone Adjuster 1 ("TA1," later referred to as "TCR1"), then to the position of Telephone Adjuster 2 ("TA2," later "TCR2"), then to the position of Continuing Unit ("CU") Level 1 examiner, and finally to the position of a CU Level 2 examiner.

(*Id*. at 12–17.) In 1994, Dettori received his final promotion to the position of CU Level 3 examiner, which he held until 2019. (*Id*. at 18.)

### II. Dettori's Performance Evaluations and Supervision from 2009 through 2020

GEICO regularly reviews the performance of examiners in accordance with certain metrics, including the rate of case completion and case file quality, among other things. (*See* Koonz Tr. at 47, ECF No. 39-2; Asmus Tr. at 42–43, ECF No. 39-3; Performance Improvement Plans, ECF Nos. 39-6 to 39-9, 39-21.) The examiners are rated on a scale from one to five, with one as the lowest rating, five as the highest, and three indicating minimum satisfactory performance. (Asmus Tr. at 54–55; Pl.'s 56.1 Resp. ¶ 15.) Supervisors and managers regularly audit the files of the examiners whom they supervise, and any issues uncovered in a given file may negatively affect the performance rating given to an examiner. (*Id*. at 14, 71–72, 96–97.)

On December 14, 2009, Dettori was placed on his first Performance Improvement Plan ("PIP") due to his low case closure rate. (*See* Dec. 14, 2009 PIP, ECF No. 39-6.) Although the goal for examiners in Dettori's department was to close 18.6 cases per month and 224 cases each year, as of November 2009, Dettori had been averaging only 12.55 case closures per month and had only closed 170 cases so far that year. (*Id*.)

Dettori was put on a second PIP several months later, on May 19, 2010, after a supervisory audit determined that only 66.7% of his audited files were rated satisfactory. (*See* May 19, 2010 PIP, ECF No. 39-7.) A condition of the second PIP was that he receive a satisfactory rating for at least 82% of audited files by August 31, 2010. (*See id*.)

On October 24, 2014, Dettori was placed on a third PIP, again due to his low case closure rate. (*See* Oct. 24, 2014 PIP, ECF No. 39-8.) According to Dettori, he ultimately satisfied the requirements of the 2009, 2010, and 2014 PIPs. (Dettori Tr. at 190.)[2]

Beginning in around 2018, Dettori regularly met with his supervisor, Justin Koonz, to discuss his handling of claim files and quality issues. (Asmus Tr. at 35–37; *see* Koonz Coaching Notes, ECF No. 39-11.) Koonz's supervision notes address Dettori's many mistakes and performance issues, including concerns regarding the quality of his audited files from January through April 2018. (*See, e.g.*, Koonz Coaching Notes at 3, 5, 10, 12, 14, 16, 20.)[3] Koonz found that Dettori "consisten[tly] had great closure numbers but struggles on file quality. We discussed

[2] Dettori maintains that he was not subject to any adverse action as a result of the 2009, 2010 or 2014 PIPs, but only relies on a portion of his deposition transcript in which counsel read the Complaint's allegation that Dettori was not subject to any adverse action as a result of being placed on three different performance improvement plans from 2009 to 2014. (Pl.'s 56.1 Resp. ¶¶ 12–14.) GEICO does not dispute the fact that placement on the 2009, 2010, and 2014 PIPs did not constitute adverse actions. (*See* Dkt, Mot.) Nevertheless, because Dettori did not cite admissible evidence to show that he was not subject to adverse action as a result of the performance issues he experienced in 2009, 2010, and 2014, the Court does not recognize this asserted fact.

[3] As a threshold issue, Dettori objects to consideration of the Koonz Coaching Notes, as well as other GEICO documents regarding his employment and applications for various positions, on the basis that they contain inadmissible hearsay. (*See generally* Pl.'s 56.1 Resp.) "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). The Court finds that the GEICO employment documents, which were created contemporaneously with Dettori's employment in the course of GEICO's regularly conducted business, are admissible under the well-known business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6); *see also Ramsaran v. Booz & Co. (N.A.) Inc.*, No. 1:14-cv-708, 2015 WL 5008744, at *8 (S.D.N.Y. Aug. 24, 2015) (admitting evidence of plaintiff's poor performance in Title VII summary judgment case and collecting cases in which courts "have accepted personnel files and employee review documents as business records under Rule 803(6)").

the root cause being his phone inefficiency." (Koonz Coaching Notes at 3.)[4] "He needs to stay on topic and avoid telling stories or having unrelated conversations with customers & attorneys[.]" (*Id*. at 5). Dettori received an overall rating of 2.64 in February 2018 and 2.81 in March 2018 for file quality.[5] (*Id*. at 5, 14.) Koonz's supervision notes indicate that Dettori spent nearly double the amount of time on the phone as his peers and that Koonz advised Dettori that if he were to improve his efficiency on the phone, he could better focus on other areas of his work requiring improvement. (*See* note 4 *infra*.)

On April 25, 2018, Dettori was placed on his fourth PIP for failing to meet certain performance metrics relating to file quality for three consecutive months ("Fourth PIP"). (*See* Apr. 25, 2018 PIP, ECF No. 39-9; Felice and Koonz Emails, ECF No. 39-12 at 2–3.) Before placing him on the Fourth PIP, GEICO's Human Resources Department reviewed a breakdown comparing supervisor ratings of examiners, including Dettori, and Koonz's supervision logs in order to ensure the consistent treatment of examiners. (*See id*.)

Dettori satisfied the Fourth PIP requirements and received an overall rating of 3.5 out of 5 for 2018, which demonstrated satisfactory performance, but still fell within the bottom quartile of examiners. (2018 Annual Performance Appraisal at 3, ECF No. 43-17.) Koonz's 2018

---

[4] Koonz further observed regarding Dettori's performance: "If this file were to be audited you would [have] received 3 NS downgrades." (Koonz Coaching Notes at 10); "I observed one of Pete's calls this last week exceeding 30 minutes and reminded him we need to stay on topic and negotiate the case and avoid side conversations such as discussions about dog breeding." (*id*. at 12); "Pete will use a diary template to ensure items for follow up diary are not missed" (*id*. at 14); "Your biggest error is diary. You have 13 downgrades in missing 30 day diary." (*id*. at 16); "CIQ reflects that an offer was made to the plaintiff attorney on 4/18, however there are no notes to support this. It is important that we document all transactions that take place." (*id*. at 20).

[5] The record does not establish Dettori's performance ratings for January and April 2018.

evaluation notes for Dettori state, "In order to be successful Pete[] needs [to] work on his time management." (*Id.*)

Around the same time in 2018, Dettori mentioned to Koonz that he was "blanking out for moments here and there." (Dettori Tr. at 29–30.) Koonz recommended that Dettori seek medical attention. (*Id.* at 30.) Thereafter, also some time in 2018, Dr. Jonathan Lown diagnosed Dettori with severe sleep apnea. (*Id.* at 30–31; Lown Tr. at 12, ECF No. 39-37.) Dettori testified in deposition that he "believe[d] that" his sleep apnea affected his job performance and that "[o]n a daily basis, [he] would get pretty much brain fog at 2:00 [pm]." (Dettori Tr. at 27; *see also id.* at 42 ("The afternoon brain fog and morning fatigue was pretty much every day.").)

Sometime in 2018, Dettori met with Kathy Asmus, Koonz's supervisor, to discuss Koonz's feedback and audit procedures used to evaluate his work, which Dettori believed were "wrong." (*Id.* at 48.) Specifically, Dettori challenged how his supervisors were imposing the company expectation that examiners work in each of their files at least every thirty days. (*Id.*) Dettori recounted the conversation with Asmus as follows:

> I said, ["]one day would be October 1st. If one day is October 1st, 30 days is October 30th, and these files are not late.["] And she said, ["]I don't agree with you. And at this point, her tone changed. And I said, ["]What don't you agree with, my logic or my math?["]
>
> I said, ["]I've worked at this position for over 30 years, and I have never received a non-satisfactory for being one day late on diary.["] And then she looked at me with the expression of a wet basset hound and said, ["]The old ways no longer apply to your job today.["] And I took that as her saying that I was old.

(Dettori Tr. at 50.) Asmus is older than Dettori. (Asmus Tr. at 140; Pl.'s 56.1 Resp. ¶ 27, ECF No. 42.)

In February 2019, Dettori received a warning for failure to comply with a company procedure regarding "setting reserves" for at least four of his case files. (Feb. 26, 2019 Warning

at 2, ECF No. 39-14; *see also* Asmus and Koonz Emails at 2, ECF No. 39-15.) Koonz counseled Dettori on the importance of setting timely reserves and advised that failure to do so could result in disciplinary action, up to and including termination. (Feb. 26, 2019 Warning at 2.)

On May 25, 2019, Dettori was demoted from the position of a CU Level 3 examiner to the position of TCR2 examiner. (Asmus Memorandum, ECF No. 39-17 at 2.) Following his demotion, Dettori was supervised by Ryan Morosky. (Morosky Tr. at 7, ECF No. 39-5; Pl.'s 56.1 Resp. ¶ 82.) Around seven months later, on December 30, 2019, Dettori was placed on a fifth PIP ("Fifth PIP") due to his low case closure rate and rating of 1 out of 5 for his file quality and failure to meet other performance metrics over the previous three months. (Dec. 30, 2019 PIP at 2–3, ECF No. 39-21.) Dettori ended 2019 with an overall rating of 1.7 out of 5, which was based on four months of work as a CU Level 3 examiner and six months of work as a TCR2 examiner. (2019 Annual Performance Appraisal at 2–5, ECF No. 39-23.)

From mid-January 2020 through late November 2020, Dettori was on medical leave from GEICO due to a non-work related injury. (2020 Annual Performance Appraisal at 2, ECF No. 39-24.) Upon his return to work in November 2020, Dettori was informed that the Fifth PIP was still in force. (*Id.*)

During the first half of 2021, Dettori's supervisors, including Morosky as well as Matt Dwyer, made regular notes about his performance issues relating to his file backlog, inability to follow supervisors' instructions, and failure to include critical information in files, among other things. (*See* Morosky July 2019-April 2021 Coaching Notes, ECF No. 39-18; Dwyer May-June 2021 Coaching Notes, ECF Nos. 37-27, 37-28.) As of April 16, 2021, Dettori had a monthly rating of 1.68 out of 5 and an overall year-to-date rating of 2.01. (Morosky July 2019-April 2021 Coaching Notes at 62.) Dettori's performance suffered even though his supervisors transferred

some of his work to colleagues and met with Dettori on dozens of occasions to discuss how he could improve his performance. (*See, e.g.*, Morosky July 2019-April 2021 Coaching Notes, Dwyer May-June 2021 Coaching Notes.)[6] Dettori maintains that GEICO intentionally gave him harder-than-average files upon his return from leave in November 2020 so that they could "get rid of" him. (Dettori Tr. at 221, 224.)

On April 15, 2021, Dettori received another warning for not meeting certain proficiency metrics ("April 2021 Warning"). (April 15, 2021 Warning, ECF No. 39-25 at 2.) Dettori closed only 28.75 cases in February 2021 and 21.65 cases in March 2021, both of which are less than

---

[6] For example, Morosky's notes on January 26, 2021, state:

> Reminded Pete that he needs to send me his negotiation calls made. He needs to be making at least 5 a day and sending these to me daily. This will help to make sure that he is following up on negotiation calls to generate more closures.

The following day, Morosky wrote in his notes:

> Pete did not send me his negotiation calls again yesterday. He sent me 1 email from the file. I provided Pete a copy of a teammate[']s email of the claim numbers that negotiation calls were made on to show Pete an[] example of what he should be sending. Pete questioned this as he did not see how it helps him do his job. I coached Pete again that this is a way for [him] and I to track his daily negotiation calls to make sure that he is making a sufficient amount of calls per day to generate closures. I also reminded him that this was [what] he agreed to do for his CP and actions plans in his PIP. I also advised Pete that is the same expectation that the rest of the team has. Pete replied "I will do my best."

(Morosky July 2019-April 2021 Coaching Notes at 46–47.) Similarly, Matt Dwyer's notes on May 6, 2021, document his conversation with Dettori regarding a particular case:

> No discussion with attorney to date. Minimal attempts also made. Pete extended offer in writing on 3/25 and did not follow up again until 4/27. Instruction was also given to Pete to follow up with insured to verify status of his ticket, Pete last followed up on 2/21. Nothing noted in his workplan to address this follow up. Coached Pete again that claims in negotiation need to be on a weekly diary and additional efforts should have been made to dis[c]uss claim prior to sending offer in writing. Additionally coached Pete that he needs to update his workplan . . . as can impact negotiations. Pete understood.

(Dwyer May-June 2021 Coaching Notes at 5.)

GEICO's requirement to close 55 cases per month in order to demonstrate satisfactory performance. (*Id.*)

**III. April 29, 2021 Application for the CSR Role**

On April 29, 2021, Dettori applied for a demotion to a Customer Service Representative ("CSR") position. (CSR Candidate Matrix, ECF No. 39-35 at 4.) He was around 60 years old at the time. (Dettori Tr. at 19.) GEICO hiring managers cited his poor interview performance as the basis for rejecting him from the position. (*See* CSR Candidate Matrix at 4 (documenting applicants' interview performance).) A table including the hiring manager comments about all candidates for the CSR position sets forth the following comment about Dettori:

> We are not selecting Peter Detorri [sic] due to his performance in the interview. Peter struggled with answering any of the questions. When Peter was asked a question, he would respond in lengthy story-telling that was unrelated to the question posed. Once he was finished telling his story, the question would need to be re-asked as he did not answer the question. He was instructed several times to please withhold his stories, as they were unrelated to the question and resulting in the interview being twice as long as the average candidates.

(*Id*. at 4.)

Of the fourteen people who applied for the CSR position, 79% were under the age of 40. (CSR Age Chart, ECF No. 43-4.)[7] The twelve applicants selected for the position ranged in age from 21 to 59 years old. (*Id.*) Only two individuals were not selected: Dettori, who was 60 years old at the time, and Employee F, who was 33 years old and was rated a 3.5 out of 5. (Declaration of Robert Felice ("Felice Decl.") ¶ 5, ECF No. 70-10; CSR Candidate Matrix at 2–4.) The breakdown of all applicants and their ages and ratings is as follows:

A. Employee A, age 32 – rated 1.87 out of 5 (hired)

[7] While there were originally seventeen applicants for the CSR position, four ultimately withdrew. (CSR Candidate Matrix at 4.)

B. Dettori, age 60 – rated 2.01 out of 5 (not hired)

C. Employee C, age 34 – rated 2.6 out of 5 (hired)

D. Employee D, age 33 – rated 3.2 out of 5 (hired)

E. Employee E, age 50 – rated 3.49 out of 5 (hired)

F. Employee F, age 33 – rated 3.5 out of 5 (not hired)

G. Employee G, age 35 – rated 3.5 out of 5 (hired)

H. Employee H, age 21 – rated 3.58 out of 5 (hired)

I. Employee I, age 31– rated 3.0 out of 5 (hired)

J. Employee J, age 34 – rated 3.57 out of 5 (hired)

K. Employee K, age 37 – rated 3.92 out of 5 (hired)

L. Employee L, age 59 – rated 4 out of 5 (hired)

M. Employee M, age 24 – rated 4 out of 5 (hired)

N. Employee N, age 36 – rated 5 out of 5 (hired)

(CSR Candidate Matrix at 2–3.) As shown above, eleven of the twelve successful candidates had ratings ranging from 2.6 to 5, which are higher than Dettori's 2.01 rating. (*See id.*) Although one successful candidate, Employee A, was rated below Dettori at 1.87, this candidate was hired "based on her interview performance" because she provided specific, compelling responses to interview questions as reflected in the following explanation by the hiring managers:

> We have selected [Employee A] based on her interview performance. [Employee A] has prior claims experience helping customers, moving claims to closure, resolving customer issues, and providing customer service. When asked about the most important aspect of the CSR job, [Employee A] mentioned customer service because you are helping customers when they are upset and making the process as seamless as possible. When asked how she would handle a situation where the customer was upset with an answer or decision, [Employee A] advised that she would be firm with the response but also apologize for the accident and explain the situation to the customer. Being able to clearly explain a situation to the customer and being understanding and empathetic are important aspects of the CSR job.

(*Id*. at 3.)

## IV. June 10, 2021 Application for Senior Examiner

On June 10, 2021, Dettori applied for a promotion to the role of Senior Examiner in the Continuing Unit ("CU") Department. (CU Senior Examiner Candidate Matrix, ECF No. 39-36 at 4.) According to GEICO, Dettori was not eligible for this position because he had received the April 2021 Warning and a year-to-date rating of 1.83 in his current position, and pursuant to GEICO policy, any examiner with a rating lower than 3.0 or on a warning is ineligible for promotion. (*Id*.; Dettori Tr. at 69–70, 135–38; CU Senior Examiner Candidate Matrix at 4.) GEICO relies on comments from its hiring managers, which are documented in the CU Senior Examiner Candidate Matrix, as well as Dettori's deposition testimony, for the existence of such a policy. (*See* Def.'s 56.1 Statement ¶¶ 133–35 (citing CU Senior Examiner Candidate Matrix and Dettori Tr. at 69–70, 135–38).) The hiring manager comments provide, "Based upon Pete's results, I cannot recommend him for this position *as he does not qualify* by meeting a 3.0 YTD. Pete would need to continue to improve and show sustained high performance in his current role before posting for Senior Examiner." (CU Senior Examiner Candidate Matrix at 4 (emphasis added).) Concerning the decision to reject Dettori's application, the hiring manager further noted the "Disposition Reason" as "Does Not Meet Experience Requirements." (*Id*.) The hiring manager comments similarly categorized a different candidate as "Does Not Meet Experience Requirements" because that candidate "is currently on a warning from his prior position in ta1 that expires 8/17/21." (*Id*.)

Dettori contests the existence of such a GEICO policy by focusing on his deposition testimony. (Pl.'s 56.1 Resp. ¶ 133.) He argues that although he may have been informed of the GEICO policy that a promotion was unavailable to anyone with a warning or a rating lower than

3.0, he believed that he would be considered for the position nonetheless. (Dettori Tr. at 70, 135–38.) However, Dettori also testified that in 2019, he had the following conversation with a supervisor about his application for other positions at GEICO at that time:

> He told me, You were on a warning, and, you know it's company policy you can't post. Where I expressed to him, no, I was told I can, I can post now for this job. And he said to me, I'm going to have that – I'm going to have it pulled. He told me that. I got a phone call from John, that supervisor, where he said, you know, I didn't know you were on a warning, you know. You know, Your post is going to be pulled.

(*Id*. at 70.) Dettori also testified that he did not have any information suggesting that the ineligibility policy was implemented against him or anyone else to discriminate on the basis of age. (*Id*. at 138.)

## V. June 24, 2021 Termination

By May 2021, Dettori's performance had not improved, and he did not meet the benchmark expectations set forth in the April 2021 Warning. (Booth and Felice Emails at 2, ECF No. 39-29.) On June 4, 2021, Angela Booth, a manager in Dettori's department, informed Robert Felice of Human Resources that in May 2021, Dettori closed only 11 cases even though he needed 19 closures to achieve a satisfactory rating of 3.0. (*Id*. at 3–4.) Booth recommended the termination of Dettori's employment. (*Id*. at 4.) Felice and Booth discussed by email whether Dettori was on track in June 2021 to improve his May 2021 scores by 50%, in which case his warning would be extended for another 30 days. (*Id*. at 2–4.) On June 17, 2021, Booth confirmed in an email to Felice that Dettori's June 2021 performance would not satisfy the 50% improvement benchmark. (*Id*. at 2.)

As of June 2021, Dettori had an overall year-to-date rating of 1.83 out of 5. (Booth and Felice Emails, ECF No. 39-30.) His score was the second-lowest of the twelve examiners in his

department at GEICO's Woodbury, New York office. (*See id.*) The following is a breakdown of scores for the twelve examiners as of June 2021:

1. Dettori, age 60 – rated 1.83 out of 5
2. Employee No. 2, age 27 – rated 2.09 out of 5
3. Employee No. 3, age 24 – rated 2.11 out of 5
4. Employee No. 4, age 29 – rated 2.52 out of 5
5. Employee No. 5, age 28 – rated 2.6 out of 5
6. Employee No. 6, age 26 – rated 3.05 out of 5
7. Employee No. 7, age 28 – rated 3.25 out of 5
8. Employee No. 8, age 37 – rated 3.39 out of 5
9. Employee No. 9, age 24 – rated 3.43 out of 5
10. Employee No. 10, age 35 – rated 3.64 out of 5
11. Employee No. 11, age 40 – rated 4.03 out of 5
12. Employee No. 12, age 32 – rated 4.2 out of 5

(*Id.*; TCR2 Examiner Age Chart, ECF No. 43-1.) Seven examiners achieved satisfactory ratings (3.0 or above), while five did not. (*Id.*) Of the four examiners other than Dettori who were rated in the unsatisfactory range, two of them, Employees No. 2 and 4, were new to the TCR2 position and not yet subject to discipline. (*Id.*; Booth and Felice Emails at 3; *see also* April 2021 Corrective Action Spreadsheet, ECF No. 43-30.) The remaining two examiners other than Dettori who scored in the unsatisfactory range, Employees No. 3 and 5, both received warnings in April 2021 (the same time as Dettori) instructing them to meet benchmark goals for May 2021. (TCR2 Examiner Performance Chart, ECF No. 39-31; April 2021 Corrective Action Spreadsheet.) Employee No. 3 met those goals by obtaining a satisfactory rating of 3.09 in May

2021, but then resigned on June 17, 2021. (Felice and Bottcher Emails, ECF No. 39-32 at 2; Employee No. 3 Resignation Email, ECF No. 70-11.) Information regarding Employee No. 5's May 2021 performance is unknown, but she ultimately resigned on June 21, 2021. (Employee No. 5 Resignation Letter, ECF No. 70-12.)

GEICO terminated Dettori's employment on June 24, 2021. (Felice Email, ECF No. 39-33.)

## PROCEDURAL HISTORY

Dettori timely filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on or around December 14, 2021, and received a Notice of Right to Sue Letter on July 29, 2022. (EEOC Dismissal and Notice of Rights, ECF No. 1 at 16–20.) He filed the Complaint on October 24, 2022, bringing claims under the ADEA, NYSHRL, and the Suffolk County Human Rights Law, Suffolk Cty. 528-1 *et seq*. (ECF No. 1.) Dettori later voluntarily withdrew the SCHRL claims. (ECF No. 38 at 1.)

GEICO filed an Answer on March 2, 2023. (ECF No. 9.) From June 2023 through June 2024, the parties engaged in extensive discovery, and Magistrate Judge Dunst resolved a number of discovery disputes between the parties. (*See* ECF Nos. 14, 15, 17, 21–25, 29–31, 33; Min. Entries, Aug. 17, 2023, Feb. 7, 2024; Elec. Orders, Dec. 6, 2023, May 8, 2024, June 13, 2024.)

On July 10, 2024, GEICO requested a conference regarding its anticipated motion for summary judgment on Dettori's ADEA and NYSHRL claims. (ECF No. 38.) In support, GEICO submitted a Rule 56.1 statement ("Def.'s 56.1 Statement," ECF No. 38-1), the declaration of Louis P. DiLorenzo, counsel for GEICO, and attached exhibits (ECF No. 39, the "First DiLorenzo Decl."; ECF Nos. 39-1 through 39-39). On July 17, 2024, Dettori opposed and attached a Response to Defendant's Rule 56.1 statement ("Pl.'s 56.1 Resp.," ECF No. 42-1) and

the declaration of Caner Demeriyak, Dettori's counsel and attached exhibits (the "First Demeriyak Decl.," ECF No. 43; ECF Nos. 43-1 through 43-39). The Court held a pre-motion conference on July 24, 2024, and scheduled briefing on the Motion. (Min. Entry, July 24, 2024.)

On January 27, 2025, the parties filed the fully-briefed motion for summary judgment. (ECF No. 70.) GEICO attached to the Motion a second declaration from DiLorenzo and accompanying exhibits (the "Second DiLorenzo Decl.," ECF No. 70-3; ECF Nos. 70-4 through 70-9). In addition, GEICO attached to its reply the declaration of Robert Felice, a GEICO Senior Associate Relations Specialist and accompanying exhibits (Felice Decl., ECF No. 70-10; ECF Nos. 70-11, 70-12).

On September 10, 2025, the Court heard oral argument on the Motion. (ECF No. 42.)

**LEGAL STANDARDS**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022).[8] "A fact is material if it might affect the outcome of the suit under the governing law." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *rev'd on other grounds,* 604 U.S. 693 (2025). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). Under this standard, if

[8] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

the movant meets its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial" in order to avoid summary judgment. *McKinney*, 49 F.4th at 745–46. The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-cv-1220, 2024 WL 3264125, at *2 (summary order) (2d Cir. July 2, 2024). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant . . . only if we conclude that on the record presented, considered in the light most favorable to the non-movant . . . no reasonable jury could find in the [non-movant]'s favor."). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983); *see also Jones v. City of New York*, 603 F. App'x 13, 14 (2d Cir. 2014) (summary order) (holding that summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

## DISCUSSION

GEICO is entitled to summary judgment on Dettori's discrimination claims under the ADEA. The Complaint alleges that GEICO engaged in three adverse employment actions giving rise to these claims: (1) the failure to hire Dettori for the CSR position shortly after April 29,

2021; (2) the failure to promote him to the Senior Examiner position shortly after June 10, 2021; and (3) the termination of Dettori's employment on June 24, 2021. Viewing the record in the light most favorable to Dettori, Dettori fails to identify any evidence in the record creating a genuine dispute as to whether the context surrounding these adverse actions gives rise to an inference of age discrimination as required to meet the prima facie case requirement at summary judgment. Moreover, even if there were a genuine dispute of material fact as to whether Dettori can establish a prima facie case of age discrimination regarding any of the three alleged adverse actions—and there is not—GEICO has amply met its burden of articulating, through undisputed facts, that there was a legitimate, non-discriminatory purpose for each adverse action. Finally, Dettori fails to identify any evidence in the record that creates a genuine dispute of material fact as to whether any of the legitimate, non-discriminatory purposes offered by GEICO for the adverse actions at issue are pretextual and that Dettori's age was the "but-for cause" of the decisions not to hire Dettori for the CSR and Senior Examiner roles or the decision to terminate his employment.

Accordingly, summary judgment is granted to GEICO on the ADEA age discrimination claims. After dismissal of the ADEA claims, there are no remaining federal claims in this action. Therefore, under 28 U.S.C. § 1367(c), this Court declines to exercise jurisdiction over the NYSHRL claims, and those claims are dismissed without prejudice.

## I. Framework for Analyzing Age Discrimination Claims Under the ADEA

ADEA age discrimination claims are analyzed under the three-part, burden-shifting framework for Title VII discrimination claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Carr v. New York City Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023); *see also Tillman v. Grenadier Realty Corp.*, No. 24-cv-2325, 2025 WL 2910611, at *1 (2d Cir. Oct.

14, 2025) (summary order). "At the first stage, the plaintiff bears the burden of establishing a 'prima facie' case." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012). "To establish a prima facie case, a plaintiff with an age discrimination claim must show '(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination.'" *Id*. at 129. In order to survive a summary judgment motion by a defendant named in an ADEA age discrimination claim, a plaintiff must identify evidence in the record that establishes each element of the prima facie case or at least raises a genuine dispute of material fact as to each element. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010).

Concerning the "adverse employment action" requirement of the prima facie case, under the Supreme Court's decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), a plaintiff bringing a Title VII discrimination claim "does not have to show . . . that the harm incurred was significant[,] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id*. at 355. Rather, the plaintiff only needs to show "some harm respecting an identifiable term or condition of employment"—i.e., the plaintiff must have been "left [ ] worse off" but not necessarily "significantly so." *Id*. at 355, 359. The Second Circuit has not yet determined whether this standard specifically applies to ADEA claims. Nevertheless, this Court agrees with other circuits and district courts within the Second Circuit that have held that the *Muldrow* standard does apply to ADEA claims, in particular because the ADEA's statutory text does not contain a "significance" requirement. *See* 29 U.S.C. § 623; *see also, e.g., Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024);

*Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 90–91 (S.D.N.Y. 2024).

Once a plaintiff has either established a prima facie case of age discrimination or at least raised a genuine dispute of material fact as to the existence of a prima facie case, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action against the employee. If the employer does so, then the burden shifts back to the employee to show that the employer's articulated reason is pretext for discrimination." *Carr*, 76 F.4th at 177. "The plaintiff bears 'the ultimate burden of persuading the court that she has been the victim of intentional discrimination.'" *Id.*

"Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014). "A plaintiff cannot merely rationalize, explain, or disagree with an employer's proffered non-discriminatory reasons to survive summary judgment." *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 29 (E.D.N.Y. 2015); *see also Cardo v. Arlington Cent. Sch. Dist.*, 473 F. App'x 21, 23 (2d Cir. 2012) (summary order) ("While Cardo disputes the specifics of some of the incidents cited by defendants, he does not deny that these incidents occurred, and offers no evidence that the District did not in good faith conclude that he had difficulties getting along with others."); *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 266 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115 (2d Cir. 2010) ("[A] plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact.").

**A. <u>Dettori's Prima Facie Case</u>**

Dettori has not met his minimal burden of raising a genuine dispute of material fact as to whether he can make out a prima facie case of age discrimination with respect to any of the three alleged adverse actions at trial. The first three elements of the prima facie case are not at issue because, as GEICO concedes, the undisputed facts show that Dettori was within the protected age group, was qualified for each of the positions at issue, and was subject to three different adverse employment actions. (Mot. at 10; Hr'g Tr. 6:7–8, 48:2–4.) However, Dettori has not identified any evidence in the record creating a genuine dispute of material fact as to the fourth element for a prima facie case: whether any of the three adverse actions occurred under circumstances giving rise to an inference of discrimination. On this basis alone, summary judgment for GEICO is warranted.

***i. Dettori was Within the Protected age Group***

The ADEA bars discrimination against an individual "because of such individual's age," where a person is "at least 40 years of age." 29 U.S.C. §§ 623(a)(1), 631(a)); *see also Fu v. Consol. Edison Co. of New York, Inc.*, 855 F. App'x 787, 789 (2d Cir. 2021) (summary order).

There is no dispute that Dettori was more than 40 years old and therefore within the protected age group at the time of each of the adverse actions at issue. Dettori was born in 1961. (Dettori Tr. at 19.) At the time of the earliest challenged adverse employment action in April 2021—when GEICO failed to hire Dettori for the CSR position—Dettori was around 60 years old. (*Id.*; Hr'g Tr. 9:16.) The other two adverse actions took place just months afterwards in June 2021, when Dettori was not promoted to Senior Examiner and, subsequently, terminated from his position at GEICO. *See* Factual Background Section IV–V. Therefore, Dettori was within the protected age group at the time of each of the challenged adverse employment actions.

### *ii. Dettori was Qualified for Each of the Positions at Issue*

To demonstrate qualifications for a position at the time of an adverse employment action, a plaintiff need only "show that []he possesses the *basic skills* necessary for performance of the job." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (emphasis added). The Second Circuit has "repeatedly held" that "the qualification[s] necessary" are "minimal" and do not demand a showing that an employee "was performing his duties satisfactorily." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91–92 (2d Cir. 2001), *as amended* (June 6, 2001); *see also Ruderman v. L. Off. of Yuriy Prakhin, P.C.*, No. 19-cv-02987, 2022 WL 20538757, at *6 (E.D.N.Y. Jan. 25, 2022) (applying *Slattery*). "[E]specially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Kovaco*, 834 F.3d at 136.

GEICO does not contest that Dettori was qualified for the positions implicated in each of the challenged adverse employment actions. (Mot. at 10.) Based on the undisputed facts and viewing the record in the light most favorable to Dettori, the record shows that he did indeed possess the minimum qualifications for each role. First, Dettori had worked as a CSR for GEICO shortly after joining the company in 1986 and before being promoted to a different role, and thus was qualified for the CSR position for which he applied in April 2021. (Dettori Tr. at 12–17.) Second, although Dettori was denied a promotion to Senior Examiner, he possessed the minimal qualifications for this role in light of his lengthy tenure at the company in a number of different roles. (*See* CU Senior Examiner Candidate Matrix at 4; Dettori Tr. at 6.) Third, Dettori was placed in the TCR2 examiner role in 2019 and was terminated in 2021. (Asmus Memorandum at 2; Felice Email.) Therefore, GEICO had "already hired" Dettori for this role, and he was therefore qualified for it. *Kovaco*, 834 F.3d at 136. Accordingly, Dettori has met his "minimal"

burden of establishing his qualifications for each position when making out a prima facie case. *Slattery*, 248 F.3d at 91–92.

#### ***iii. Dettori Experienced Adverse Employment Actions***

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007); *see also Pfizenmayer v. Hicksville Pub. Schs.*, 700 F. App'x 64, 65 (2d Cir. 2017) (summary order). Materially adverse employment actions include the termination of employment, involuntary demotion, failure to promote, and an internal transfer to another position. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (recognizing as adverse employment actions "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation"); *Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003) (recognizing failure to promote as an adverse employment action). Failure to hire may also constitute an adverse employment action. *Bucalo*, 691 F.3d at 128–31.

GEICO concedes that Dettori has demonstrated the third element of the prima facie case by identifying three different adverse employment actions. (Hr'g Tr. 6:7–11:12.) These are: (1) the failure to hire Dettori for the CSR role in around April 2021, (2) the failure to promote Dettori to Senior Examiner in around June 2021, and (3) GEICO's termination of Dettori's

employment as a TCR2 examiner on June 24, 2021.[9] (*Id*. 29:5–30:22; 48:2–4.) Each of these discrete actions by GEICO constitutes a "materially adverse" change in Dettori's employment that is actionable under the ADEA. *Pfizenmayer*, 700 F. App'x at 65.

#### ***iv. There is no Genuine Dispute of Material Fact as to an Inference of Discrimination***

At summary judgment, a plaintiff must, at a minimum, identify evidence in the record supporting a genuine dispute of material fact as to whether the circumstances give rise to an inference of discrimination with respect to an adverse action as required by the fourth element of a prima facie case of age discrimination. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 52 (2d Cir. 2001). As the Second Circuit recognized in the Title VII context, "the evidence necessary to satisfy th[e] initial burden" of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is "minimal." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). An inference of discrimination may arise from:

> circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [challenged adverse action].

*Id.* The Second Circuit has "long held that stray comments . . . do not create an inference of discrimination." *Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) (summary order). However, "the fact that a plaintiff was replaced by someone outside the protected class

[9] Dettori initially alleged a fourth adverse employment action—his May 25, 2019 demotion from the CU Level 3 examiner position to the TCR2 examiner role—but later conceded that any age discrimination claim relating to such an adverse action was time-barred under federal law. (Hr'g Tr. 29:16–19.)

will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage." *Littlejohn*, 795 F.3d at 313. Similarly, a plaintiff may satisfy the burden to raise an inference of discrimination by "show[ing] that the employer treated him or her 'less favorably than a similarly situated employee' outside of the protected group." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014); *see also Mirinaviciene v. Keuka Coll.*, No. 24-1006, 2025 WL 783646, at *2 (2d Cir. Mar. 12, 2025) (summary order). A "comparator[] must be 'similarly situated' to the plaintiff 'in all material respects.'" *Raspardo*, 770 F.3d at 126. What constitutes "all material respects" varies from case to case, but "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); *see also id.* An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham*, 230 F.3d at 40.

Dettori has failed to point to any evidence in the record raising a genuine dispute of material fact as to an inference of age discrimination with respect to any of the three challenged adverse actions.

*1. April 2021 Failure to Hire*

Viewing the record in the light most favorable to Dettori, there is no genuine dispute of material fact as to whether there is an inference of age discrimination with respect to GEICO's failure to hire him for a CSR position in around April 2021.

First, as a threshold matter, Dettori cannot raise an inference of discrimination by showing that only people outside the protected age group were hired for the role because the undisputed facts confirm that two people hired for the role were, like Dettori, over the age of 40

and thus within the protected group. Of the twelve successful applicants, one was 59 years old and another was 50 years old. (*See* CSR Candidate Matrix at 2–4; CSR Age Chart.) Thus, Dettori fails to show an inference of discrimination by showing that he lost the CSR role only to candidates "outside of the protected class." *Littlejohn*, 795 F.3d at 312–13.

Dettori argues that the record supports an inference of age discrimination concerning GEICO's failure to hire him for the CSR role because 83% of the successful applicants were under the age of 40. (Opp'n at 10.) This argument ignores the undisputed fact that GEICO declined to hire both Dettori and Employee F, who was only 33 years old, for the CSR role. (CSR Age Chart; Felice Decl. ¶ 5; CSR Candidate Matrix at 2–4.) The undisputed facts that people over the age of 40 other than Dettori were hired for the CSR role and that a person under the age of 40 was, like Dettori, rejected for the role, undermines any inference that age discrimination was the basis for the decision not to hire Dettori.

Nor can Dettori raise an inference of discrimination by showing that GEICO treated him "less favorably than a similarly situated employee" who was under the age of 40. *Raspardo*, 770 F.3d at 126. GEICO hired twelve people for the CSR position, out of a pool of fourteen applicants, rejecting only Dettori, who was around 60 years old and whose most recent performance rating was 2.01 out of 5, and Employee F, who was 33 years old and had a recent performance rating of 3.5 out of 4. (Felice Decl. ¶ 5; CSR Candidate Matrix at 2–4.) The spreadsheet setting forth applicant information provides the year-to-date performance rating for each applicant in the "Hiring Manager Comments" category, which shows that this metric is considered in the hiring process. (CSR Candidate Matrix at 2–4.) Eleven of the twelve successful applicants had year-to-date ratings far higher than Dettori, ranging from 2.6 to 5. (*See* CSR Candidate Matrix at 2–4.) Although one successful candidate, Employee A, was rated below

Dettori at 1.87, she was hired "based on her interview performance" because she provided specific, compelling responses to interview questions. (*Id*. at 3.) By contrast, GEICO's records indicate that Dettori performed poorly on the interview. (*Id*. at 4.)

Viewing the record in the light most favorable to Dettori, there is no genuine dispute of material fact as to whether any of the twelve individuals hired for the CSR position were similarly situated to him in all material respects such that there is an inference of age discrimination in GEICO's failure to hire Dettori. *Graham*, 230 F.3d at 40. In order to be similarly situated to Dettori, these comparators must have "engage[d] in comparable conduct." *Id*. However, there is no "close resemblance of the facts and circumstances" between Dettori and any other applicant. *Id*. As noted, eleven of the twelve successful applicants are easily distinguishable because they were rated between 2.6 to 5 in contrast to Dettori's 2.01. (*See* CSR Candidate Matrix at 2–3.) And evaluators determined that the twelfth successful candidate, Employee A, provided compelling interview responses, in contrast to Dettori, notwithstanding her low rating of 1.83. *See id*. at 3; *Raspardo*, 770 F.3d at 126.[10]

The Court fully recognizes that "ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022). However, on the record here, for the reasons discussed above, no reasonable jury could conclude that any other applicant for the CSR role was similarly situated to Dettori.

[10] The Court need not resolve whether any of the other candidates for the CSR role were "subject to the same performance evaluation and discipline standards" as Dettori such that they were "similarly situated" to him because, for the reasons already addressed, none of the candidates engaged in "comparable conduct" to Dettori as required for them to be considered "similarly situated." *Graham*, 230 F.3d at 40.

Therefore, Dettori has failed to point to evidence in the record raising a genuine dispute of material fact as to whether GEICO failed to hire Dettori for a CSR position in around April 2021 under circumstances giving rise to an inference of age discrimination.

*2. June 2021 Failure to Promote*

Similarly, Dettori's opposition to the Motion fails to identify any evidence in the record that gives rise to a genuine question of material fact as to an inference of age discrimination with respect to GEICO's failure to promote him to Senior Examiner in around June 2021. (*See* Opp'n at 12–13.) Dettori does not identify evidence in the record showing that the successful candidates for the role were under the age of 40 and therefore "outside the protected class." *Littlejohn*, 795 F.3d at 313.[11]

Dettori concedes that there is no "similarly situated employee" who "received better treatment" than him. (*See* Hr'g Tr. 40:22–41:4.) Nor does he point to anything else that may give rise to an inference of age discrimination with respect to this adverse action. (Opp'n at 12–13.)

Accordingly, Dettori has failed to raise a genuine dispute of material fact as to whether GEICO denied him a promotion to Senior Examiner in around June 2021 in circumstances giving rise to an inference of age discrimination as required to meet the requirements of the prima facie case at the summary judgment stage.

*3. June 2021 Termination*

Dettori argues that the record supports an inference of discrimination concerning GEICO's termination of his employment as a TCR2 examiner on June 24, 2021 by pointing to

[11] The spreadsheet setting forth information about each applicant does not list the ages of any applicant (*see* CU Senior Examiner Candidate Matrix), and the parties have not identified where any such information is located in the record.

eleven different peers in that role whom he asserts were similarly situated to him but afforded better treatment. (Opp'n at 8; Pl.'s 56.1 Resp. ¶ 116.) The following list provides the ages of all twelve TCR2 examiners in Dettori's department along with their ratings for the first half of 2021:

1. Dettori, age 60 – rated 1.83 out of 5
2. Employee No. 2, age 27 – rated 2.09 out of 5
3. Employee No. 3, age 24 – rated 2.11 out of 5
4. Employee No. 4, age 29 – rated 2.52 out of 5
5. Employee No. 5, age 28 – rated 2.6 out of 5
6. Employee No. 6, age 26 – rated 3.05 out of 5
7. Employee No. 7, age 28 – rated 3.25 out of 5
8. Employee No. 8, age 37 – rated 3.39 out of 5
9. Employee No. 9, age 24 – rated 3.43 out of 5
10. Employee No. 10, age 35 – rated 3.64 out of 5
11. Employee No. 11, age 40 – rated 4.03 out of 5
12. Employee No. 12, age 32 – rated 4.2 out of 5

(*See* TCR2 Examiner Performance Chart at 2–4.) Dettori fails to show that any of his eleven peers are similarly situated individuals whom GEICO treated better than him such that the record gives rise to an inference of age discrimination concerning the termination of his employment for two overarching reasons.

First, at the time GEICO fired Dettori in June 2021, seven of his peers—Employees No. 6 through 12—had achieved year-to-date ratings of 3.0 or higher, which is considered "satisfactory" under GEICO policy. (*See* TCR2 Examiner Performance Chart at 2–4.) There is

no dispute that Dettori had a rating of 1.83, which was considered "unsatisfactory" under GEICO's policy. (Asmus Tr. at 54–55.) Even viewing the record in the light most favorable to Dettori, these seven individuals with satisfactory ratings were simply not engaged in conduct "comparable" to that of Dettori, who had an unsatisfactory rating. Therefore, the fact that GEICO terminated Dettori's employment in June 2021 but did not terminate the employment of these seven individuals simply does not support an inference of age discrimination concerning GEICO's termination of Dettori's employment. *Graham*, 230 F.3d at 40.

Second, the undisputed record also shows that Employees No. 2 and 4 were *not* similarly situated to Dettori because they were new to the TCR2 position and thus were not "subject to the same performance evaluation and discipline standards" as required for them to be considered "similarly situated" to him. *Graham*, 230 F.3d at 40. Unlike Dettori, Employees No. 2 and 4 were still in their orientation period when, in June 2021, they achieved mid-year ratings of 2.09 and 2.52 respectively as compared to Dettori's mid-year rating of 1.83. (*See* Booth and Felice Emails at 3; April 2021 Corrective Action Spreadsheet.) According to GEICO policy, employees in their orientation period are not subject to discipline and are afforded additional time to meet performance goals. (*See* Booth and Felice Emails at 3; April 2021 Corrective Action Spreadsheet.)[12] The orientation period lasts approximately three months. (*See* Booth and Felice Emails at 3; April 2021 Corrective Action Spreadsheet.) By contrast, it is undisputed that at the time of Dettori's termination from the TCR2 role in June 2021, he had worked in that position since May 2019. (Mot. at 5; Opp'n at 3.) Therefore, Dettori was no longer in an orientation

[12] For example, hiring manager comments for Employee No. 2 state, "[Name] did not meet BI Prod & Overall prod, she is on orientation and only has 2 months of results." (April 2021 Corrective Action Spreadsheet at 24.)

period, notwithstanding his year-long leave in 2020. Accordingly, because the undisputed facts show that Employees No. 2 and 4 were not "subject to the same performance evaluation and discipline standards" as Dettori, there is no genuine dispute of material fact as to whether they were similarly situated comparators. *Graham*, 230 F.3d at 40. Thus, the fact that Employees No. 2 and 4 were not terminated in June 2021 does not support an inference of age discrimination relating to GEICO's termination of Dettori's employment in that month.

Third, viewing the record in the light most favorable to Dettori, Employee No. 3 cannot be considered similarly situated to him despite her unsatisfactory mid-year performance rating of 2.11 because, unlike Dettori, she met her May 2021 performance benchmarks. (*See* Felice and Bottcher Emails at 2.) After receiving unsatisfactory ratings in April 2021, both Employee No. 3 and Dettori were given benchmark goals to meet in May 2021, which included improvement on certain metrics in order to achieve an overall, satisfactory performance rating of 3.0. (*See* TCR2 Examiner Performance Chart.) Employee No. 3 met those goals by improving her monthly rating to 3.09 in May 2021. (Felice and Bottcher Emails at 2.) However, Dettori did not meet his benchmark goals in May 2021, in part because he did not close the required 19 cases that month and only closed eleven. (*See* Booth and Felice Emails.) Thus, even viewing the facts in the light most favorable to Dettori, Employee No. 3 was not similarly situated to Dettori because she addressed her April 2021 unsatisfactory performance by meeting the goals set by her supervisors in May 2021, whereas Dettori did not. Accordingly, Employee No. 3 was not "engage[d] in comparable conduct" to Dettori such that she was similarly situated to him in "all material respects." *Graham*, 230 F.3d at 40; *Raspardo*, 770 F.3d at 126.

Fourth, to the extent that Employee No. 5 was similarly situated to Dettori for receiving an unsatisfactory midyear performance rating of 2.6 in June 2021, Employee No. 5 resigned

from GEICO on June 21, 2021, several days *before* the termination of Dettori's employment. (*See* Employee No. 5 Resignation Letter; Felice Email.) Dettori does not point to any facts in the record suggesting that GEICO treated Employee No. 5 better than him. Rather, he only speculatively asks, "Was this younger employee given any other sort of benefit denied to plaintiff?" (Opp'n at 9.) Such speculation fails to meet Dettori's burden to raise a genuine dispute of material fact as to whether there was an inference of discrimination concerning GEICO's decision to terminate him from the TCR2 role in June 2021. *See McGuinness*, 263 F.3d at 52.

Finally, Dettori argues in his opposition brief that "[u]pon termination defendant did not eliminate plaintiff's position," but "reassigned his files and duties to employees predominantly under the age of 40." (Opp'n at 10.) Dettori appears to try to raise an inference of discrimination by suggesting that younger GEICO employees were instructed to carry out the work that had been assigned to him in the TCR2 role. However, Dettori does not cite any evidence in the record for this proposition and entirely fails to address it in his Counterstatement to GEICO's Local Rule 56.1 Statement of Material Facts. (*See generally* Pl.'s 56.1 Resp.) Thus, Dettori fails to substantiate his assertion that his TCR2 workload was redistributed to employees outside of the protected group after the termination of his employment. Such unsupported assertions fail to raise even a material question of fact as to an inference of age discrimination with respect to this adverse action. *See Delaney*, 766 F.3d 170 (requiring a plaintiff to "provide more than conclusory allegations to resist a motion for summary judgment").

*4. Other Evidence*

In arguing that he has made out a prima facie case of age discrimination, Dettori asserts that he "is permitted to rely on circumstantial proof which if believed would show

discrimination" and that he "may create a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." (Opp'n at 15.) While Dettori's burden is indeed minimal at the prima facie stage, none of the various pieces of evidence proffered by Dettori meet that minimal burden. Dettori argues that GEICO set him up to fail by assigning him more work and more difficult cases when demoting him to the TCR2 role and after he returned from leave, that he was a successful employee with skills in certain areas, that Asmus made an age-related remark toward him, that GEICO published a chart of the ages of its employees in 2017 showing a desire to remove older employees, and that GEICO has purportedly shifted its position in this litigation by pointing to his sleep apnea as the basis for its adverse actions. (See Opp'n at 3–6, 11, 19.) As addressed in detail below, the Court has considered each of these arguments as well as the entire evidentiary record as a whole, which spans the full length of Dettori's employment at GEICO, in the light most favorable to Dettori. *See* Discussion Section I.C. *infra*. However, Dettori has not identified evidence supporting an inference of age discrimination with respect to any of the challenged adverse actions. *See id.*

For example, Dettori relies heavily on the 2018 statement by Asmus that "the old ways no longer apply to your job." (Opp'n at 6, 15.) As explained further below, however, this statement does not create an inference of discrimination with respect to any of the adverse actions, all of which took place three years later in 2021. It is clear from the context in which she made the statement that Asmus was responding to Dettori's defense of his prior habits and practices in the CU Level 3 Examiner role, which Asmus contended were not in line with GEICO's current policies. *See* Discussion Section I.C.3 *infra*. Similarly, Dettori contends that GEICO published a chart identifying the "Associate Population Breakdown by age as of September 2017," which demonstrates GEICO's desire to push out older employees. (*See* Opp'n

at 3–4; 2017 GEICO Associate Age Chart, ECF No. 43-38.) However, the chart itself is merely descriptive, and Dettori fails both to provide any facts showing how the chart was used and how a 2017 document supports an inference of age discrimination with respect to adverse actions carried out four years later in 2021. (*See id.*) Thus, the chart does not assist Dettori in raising an inference of discrimination with respect to any of the adverse actions at issue.

Accordingly, Dettori has failed to raise a genuine question of material fact as to whether he has met the fourth element required for a prima facie case of age discrimination with respect to any of the three challenged adverse actions: the failure to hire him as a CSR in around April 2021, the failure to promote him to Senior Examiner in around June 2021, and the termination of his employment on June 24, 2021.

**B. <u>GEICO's Legitimate, Non-Discriminatory Reasons</u>**

Even assuming that Dettori has established a prima facie case of age discrimination with respect to all three of the challenged adverse actions, GEICO has pointed to evidence supporting "some legitimate nondiscriminatory reason for" each action. *Carr*, 76 F.4th at 177. The burden thus shifts to Dettori to raise a genuine dispute of material fact to rebut those legitimate non-discriminatory reasons.

*1. April 2021 Failure to Hire*

GEICO maintains that it did not hire Dettori for the CSR position because of his interview performance. (Mot. at 23–24.) This reason is substantiated by ample evidence in the record.

The Second Circuit has recognized that an employer may "bas[e] its hiring decision on subjective criteria, such as the impression an individual makes during an interview," although it "may not use wholly subjective and unarticulated standards to judge employee performance for

purposes of promotion." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 104 (2d Cir. 2001), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e) (internal quotation marks omitted). Courts within this Circuit have found employers to articulate poor interview performance as a legitimate, non-discriminatory purpose for the decision not to hire a candidate.

For example, in *Gonzalez v. City of New York*, a court found that the employer had articulated a legitimate, non-discriminatory reason for the decision not to hire a candidate in light of records demonstrating that the plaintiff "[w]as not well prepared" for the interview, "[d]id not handle questions well[,]" and "[c]ould not articulate why [he was] ready for a second promotion [within] months [of his last promotion] . . . ." 442 F. Supp. 3d 665, 688–89 (S.D.N.Y. 2020), *aff'd* 845 F. App'x 11 (2d Cir. 2021). Similarly, in *Tucker v. New York City*, the Second Circuit affirmed a district court's finding that an employer had articulated a legitimate, non-discriminatory reason for the decision not to hire the plaintiff in light of records demonstrating that, in the interview, the plaintiff (1) "did not demonstrate a leadership style that [the employer] felt would make him successful . . . ," (2) "responded to hypothetical questions in a manner indicating 'a non-inclusive leadership style,'" and (3) "did not embrace any alternative approach to problem-solving that involved discussion and feedback," among other things. 376 F. App'x 100 (2d Cir. 2010) (summary order); *see also Haughton v. Town of Cromwell*, 2021 WL 4248858, at *6 (D. Conn. 2021) (finding that the defendant identified a legitimate non-discriminatory reason by showing evidence of plaintiff's "poor interview performance," characterized by lack of preparation and effort, "and weak application, both of which indicated not only lack of preparation but also lack of skills and experience relevant to the role . . . .").

The record before the Court includes a spreadsheet setting forth "Hiring Manager comments," "Interview Scoring/Testing," and "Candidate Manager Comments," among other

information, concerning applicants for the CSR position. (CSR Candidate Matrix, ECF No. 39-35.) While the spreadsheet sets forth positive feedback for the twelve candidates who *were* hired for this role, it includes overwhelmingly negative feedback for Dettori and provides specific examples of his poor interview performance.[13] For example, the spreadsheet documents that Dettori "expressed several times that this position is something he is applying for, not because he is interested in the job, but because he has no other options." (*Id*. at 4.) It also reports: "When asked 'why are you interested in the CSR position', [sic] [Dettori] responded, 'I was always told it's not the cards you were dealt, it's the way you handle them." (*Id*.) Similarly, the notes reflect that "[Dettori] was instructed several times to please withhold his stories, as they were unrelated to the question and resulting in the interview being twice as long as the average candidates." (*Id*.)

This evidence showing the determination by GEICO's hiring managers that Dettori performed poorly on his interview "make[s] credible" GEICO's proffered legitimate non-discriminatory reason for declining to hire Dettori for the CSR position. *Byrnie,* 243 F.3d at 106. While hiring managers gave other applicants positive feedback for their interview

---

[13] Dettori did receive some positive general feedback as follows:

> Pete has been working in the claims department for over 30 years handling primarily high exposure CU claims. Pete has a great deal of knowledge and experience that would be greatly beneficial to new associates just starting their claims career. Pete's knowledge helps him know and act on the next steps needed to properly assist our customers which is extremely important in the CSR environment.

(CSR Candidate Matrix at 3.) However, as discussed below, none of these statements raises a genuine dispute of material fact as to whether Dettori performed poorly in his interview, and the spreadsheet does not contain any positive feedback about the interview. *See* Discussion Section I.C.ii *infra*.

performances,[14] the feedback for Dettori was largely negative and conveyed that he rambled and addressed tangents, resulting either in his failure to answer the questions posed or his failure to do so in a direct and efficient manner. For example, the hiring managers noted:

> Peter struggled with answering any of the questions. When Peter was asked a question, he would respond in lengthy story-telling that was unrelated to the question posed. Once he was finished telling his story, the question would need to be re-asked as he did not answer the question. He was instructed several times to please withhold his stories, as they were unrelated to the question and resulting in the interview being twice as long as the average candidates.

(CSR Candidate Matrix at 4.) Such feedback was consistent with supervisor feedback and evaluations previously provided to Dettori in individual meetings in the years preceding his unsuccessful application for the CSR role. *See generally* Factual Background Section II *supra*; *see also, e.g.*, Koonz Coaching Notes at 3, 5, 10, 12, 14, 16, 20. For example, in 2018, Dettori's manager Justin Koonz reported that Dettori spent nearly double the amount of time on the phone than his peers and advised him to improve his efficiency on the phone. (*See* note 4 *supra*.)

Finally, evidence supports the conclusion that GEICO's evaluation of Dettori's interview performance was not entirely subjective or based on unarticulated standards. As discussed, the hiring managers noted that Dettori provided answers that were "unrelated" to the interview questions posed, leading to his interview lasting "twice as long as the average candidates." (CSR Candidate Matrix at 4.) Additionally, they noted that Dettori's responses to interview questions reflected an "inability to be efficient on the phone," which was a concern because the efficient use of phone time "is important for productivity which is one of the most important metrics in

---

[14] Feedback for one candidate who was hired, for example, states: "[Candidate] stated that the customer is our number one priority, that we need to sympathize with the customer and provide them with what they need. Being able to provide empathy and support to the customer while problem solving and multitasking are all critical skills in CSR." (CSR Candidate Matrix at 2.)

CSR." (*Id.*) The hiring managers also noted that Dettori identified as a weakness his typing skills and commented that he would "spend[] time typing when the call is over," which raised further productivity concerns because "[b]eing able to document while speaking with a customer and multitask is crucial in CSR and has a significant effect on productivity." (*Id.*)

Accordingly, even when viewing the record in the light most favorable to Dettori, the negative feedback from Dettori's interview support GEICO's position that they failed to hire him for the CSR position due to his poor interview performance.

*2. June 2021 Denial of Promotion*

GEICO argues that it denied Dettori a promotion to Senior Examiner in June 2021 because he was ineligible due to his unsatisfactory performance rating of 1.83 and receipt of a warning on April 15, 2021 while serving in the TCR2 role. (Def.'s 56.1 Statement ¶ 135; *see* April 15, 2021 Warning.)

"The application of neutral company policies is 'by definition' a legitimate, non-discriminatory reason for a particular action." *Marinacci v. U.S. Postal Serv.*, 403 F. Supp. 3d 116, 127 (E.D.N.Y. 2017) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 51 (2003)). Courts within this Circuit have routinely found the enforcement of a neutral company policy to serve as a legitimate, non-discriminatory purpose for an adverse employment action in the context of ADEA or similar claims, applying the *McDonnell-Douglas* burden-shifting framework. *See, e.g.*, *id*. (granting employer summary judgment on ADEA discrimination claims where it applied a neutral company policy to fill positions through internal, noncompetitive hiring processes before proceeding to competitive processes); *see also Bamba v. U.S. Dep't of Homeland Sec.-FPS,* No. 19-cv-8646, 2023 WL 6519628 (S.D.N.Y. July 26, 2023), *report and recommendation adopted*, No. 19-cv-8646, 2023 WL 5928327 (S.D.N.Y. Sept. 12, 2023), *aff'd sub nom. Bamba v. U.S.*

*Dep't of Homeland Sec.*, No. 23-7380, 2025 WL 670188, at *10 (2d Cir. Mar. 3, 2025) (finding employer's enforcement of the requirement that an applicant "ha[s] spent at least 52 weeks at the grade level preceding the grade level of the open position" to serve as a legitimate, non-discriminatory reason in the Title VII context); *Sethi v. Narod*, 12 F. Supp. 3d 505, 547–48 (E.D.N.Y. 2014) (finding the same regarding employer's application of a paid vacation policy in the context of a Title VII claim); *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 14 (2d Cir. 2018) (summary order) (finding the same regarding employer's enforcement of an attendance policy in the Title VII context); *Rotondo v. Best Buy Stores LLC*, No. 17-CV-552, 2019 WL 4805374, at *13 (N.D.N.Y. Oct. 1, 2019) (same).

In support of its assertion that it applied to Dettori a policy requiring an employee to have a satisfactory performance rating (3.0 or higher) for promotion eligibility, GEICO relies on the CU Senior Examiner Candidate Matrix, which sets forth applicant data and hiring manager comments regarding each applicant for the Senior Examiner role. For Dettori, the hiring manager comments provide, "Based upon Pete's results, I cannot recommend him for this position as he does not qualify by meeting a 3.0 YTD. Pete would need to continue to improve and show sustained high performance in his current role before posting for Senior Examiner." (CU Senior Examiner Candidate Matrix at 4.) Elsewhere in the Candidate Matrix, the hiring manager indicated in a "Disposition Reason" column that the reason for rejecting Dettori's application was "Does Not Meet Experience Requirements." (*Id.*) The hiring manager similarly categorized a different candidate as "Does Not Meet Experience Requirements" on the basis that the employee "is currently on a warning from his prior position in ta1 that expires 8/17/21." (*Id.*) Moreover, it is undisputed that at the time Dettori applied for the position on June 10, 2021, he had a performance rating of 1.83. (CU Senior Examiner Candidate Matrix at 4.) Thus, the hiring

manager comments evidence a GEICO policy by which an employee who has failed to achieve a satisfactory performance rating is ineligible for a promotion, and that this policy was applied both to Dettori and another employee. Notwithstanding Dettori's generic hearsay objection to GEICO records, the Candidate Matrix is properly considered a business record that falls within the exception to the rule against hearsay set forth in Fed. R. Evid. 803(6). *See Ramsaran v. Booz & Co. (N.A.) Inc.*, No. 1:14-cv-708, 2015 WL 5008744, at *7 (S.D.N.Y. Aug. 24, 2015).

Accordingly, even viewing the facts in the light most favorable to Dettori and drawing all inferences in his favor, evidence in the record supports GEICO's position that it applied a neutral policy requiring internal candidates to have a performance rating of 3.0 or higher in order for promotion eligibility when evaluating Dettori's application for a promotion to Senior Examiner.[15] Thus, GEICO has met its burden to identify a legitimate, non-discriminatory reason for its failure to promote Dettori to the Senior Examiner position in around June 2021.

### *3. June 2021 Termination*

GEICO contends that it terminated Dettori from his employment in the TCR2 role because of his poor performance in that role, specifically, his receipt of a warning in April 2021 and subsequent failure to meet specific performance benchmarks in May and June 2021, which had been set forth as part of his warning. (Mot. at 17–20.) At the time of his termination, Dettori was among the lowest-performing TCR2 employees in the GEICO Woodbury, New York office. (*See* Booth and Felice Emails at 3–6.)

[15] It is undisputed that a rating of 3.0 and above constitutes satisfactory performance. Thus, an employee with an unsatisfactory performance rating (those below 3.0) is synonymous with an employee on a warning related to their performance. Accordingly, the Court uses both categorizations—an unsatisfactory performance rating and receipt of a warning—when describing GEICO's promotion eligibility policy.

It is well-established that poor job performance is a legitimate, non-discriminatory purpose for the termination of employment. For example, in *Ehrbar v. Forest Hills Hospital*, another court in this District found that defendants satisfied their burden by proffering "numerous non-discriminatory reasons for firing Plaintiff, all relating to Plaintiff's poor job performance," including "complaints about Plaintiff's failure to address (1) long patient-waiting times, (2) substantial delays in assigning hospital beds and (3) repeated errors in financial and other reports," and "Plaintiff's improper interference with an ongoing investigation and her practice of leaving her staff without supervision on nights and weekends," among other things. 131 F. Supp. 3d at 28. *See also Cretella v. Liriano*, 633 F. Supp. 2d 54, 72 (S.D.N.Y. 2009), *aff'd*, 370 F. App'x 157 (2d Cir. 2010) (finding non-discriminatory reasons for terminating employment in light of "evaluations indicating Plaintiff's persistent failure to reach the target clientele capture rate . . . and the several preliminary warnings flagging these issues, in addition to, inter alia, Plaintiff's negative demeanor . . ."); *Testa v. CareFusion*, 305 F. Supp. 3d 423, 433 (E.D.N.Y. 2018) ("[T]here is uncontroverted evidence that plaintiff was having trouble performing his job for the entire ten-month period he worked at CareFusion prior to his termination. The record reflects that plaintiff's job performance was suffering and that plaintiff acknowledged that he wanted to do better.").

GEICO has satisfied its burden of identifying evidence in the record substantiating its contention that Dettori's poor performance in the TCR2 role was a legitimate, non-discriminatory purpose for terminating his employment in June 2021. Dettori received a warning for failing to close enough cases just two months prior to the termination. (*See* April 15, 2021 Warning, ECF No. 39-25.) Amongst his peers in the TCR2 role, Dettori ranked in the bottom tier based on performance in December 2019, April 2021, and May 2021. (Dec. 30, 2019

Performance Improvement Plan; April 15, 2021 Warning; Booth and Felice Emails.) All of this evidence is sufficient to support GEICO's articulation of a legitimate non-discriminatory reason for the termination of Dettori's employment at the summary judgment stage. *See Slattery*, 248 F.3d at 93–94.[16]

### C. The Record Does not Raise a Material Question of Fact as to Whether age was the But-For Cause of any Adverse Employment Action

Because GEICO has articulated a legitimate, non-discriminatory purpose for each challenged adverse action, Dettori must at least raise a genuine dispute of material fact as to whether "the proffered reason was not the true reason for the employment decision" in order to survive summary judgment. *Bucalo*, 691 F.3d at 129. This requires the "present[ation of] facts, which taken in [plaintiff's] favor, suffice to . . . show that a triable issue exists as to whether his age was a 'but for' cause of [his] termination." *Delaney*, 766 F.3d 163, 168. In order for age to be a "but for" cause, Dettori need not show "that age was the employers [sic] *only* consideration, but rather that the adverse employment action *would not have occurred without it*." *Id*. at 169 (emphasis in original). Summary judgment is appropriate, however, where a "plaintiff has presented no evidence upon which a reasonable trier of fact could base the conclusion that age

[16] GEICO argues that Dettori had a long history of poor performance prior to his poor performance in the TCR2 role due to his lack of time management and inability to follow company procedures. (Mot. at 1.) It points to evidence in the record showing that while serving as a CU Level 3 examiner, Dettori had been on at least five different performance improvement plans dating as far back as 2009 and had received a number of warnings. *See id*.; Factual Background Section II *supra*. However, viewing the record in the light most favorable to Dettori, he successfully completed the five PIPs and the record does not show that he was terminated from the TCR2 position based on his conduct in the CU Level 3 examiner role. *See* Factual Background Sections I–II *supra*. Furthermore, the Court need not consider whether Dettori's poor performance prior to his demotion to the TCR2 role informed GEICO's decision to terminate his employment because GEICO has articulated, and offered proof to support, Dettori's poor performance *in the TCR2 role* as a legitimate, non-discriminatory reason for the termination of Dettori's employment in that position.

was a determinative factor in defendants' decision to fire him." *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000). Accordingly, the Second Circuit has affirmed the grant of summary judgment to defendants in ADEA cases where plaintiffs have failed to refute evidence of poor job performance. *See, e.g.*, *Ferrara v. Sterling, Inc.*, No. 23-0454-cv, 2024 WL 485742, at *3 (2d Cir. Feb. 8, 2024) (summary order) (finding plaintiff's failure to refute a "long history of well-documented performance issues . . . for years before his discrimination complaint"); *Baguer v. Spanish Broad. Sys., Inc.*, 423 F. App'x 102, 103 (2d Cir. 2011) (summary order) (citing plaintiff's failure to refute defendant's "produc[tion of] testimonial and documentary evidence of [plaintiff's] poor job performance"); *Slattery*, 248 F.3d at 93 (noting that employer's "dissatisfaction with [plaintiff's] performance, and in particular with his failure to bring in new business, is extremely well-documented"); *DiGirolamo v. MetLife Grp.*, Inc., 494 F. App'x 120, 122 (2d Cir. 2012) (summary order) (same).

Dettori has not met his burden of identifying evidence in the record that raises a genuine dispute of material fact as to whether GEICO's proffered reasons for the challenged adverse actions were pretextual and that his age was the but-for cause of these actions. His contentions that GEICO's reasons are all pretextual are based on conclusory statements and unsupported assertions. The Court addresses each of Dettori's arguments in turn.

***i. June 2021 Termination of Employment***

Dettori makes four principal arguments in asserting that GEICO's position that he was terminated from the TCR2 role for poor performance is pretext for age discrimination. First, he contends that after being demoted to this role in 2019, he was set up to fail because his supervisor buried him in work and assigned him the most difficult cases without giving him authority to close cases. (Opp'n at 15–16.) Second, he argues that he was actually successful in

the TCR2 role and in prior positions at GEICO. (*Id.*) Third, Dettori maintains that the record contains evidence of age-based animus, specifically a 2018 remark by Asmus criticizing his performance and a 2017 chart setting forth the age of its employees. (*Id.* at 14–15.) Fourth, Dettori argues that GEICO has purportedly shifted from the position that his employment was terminated for poor performance to the position that it was terminated due to Dettori's sleep apnea, which raises a question of fact as to pretext. (*Id.* at 19.)

For the reasons explained below, Dettori fails to present any evidence upon which a reasonable jury could base the conclusion that age was a determinative factor in GEICO's decisions in 2021 to terminate his employment.

*1. Difficulty of Dettori's Assignments*

Dettori maintains that after he was demoted from the CU Level 3 Examiner role to the TCR2 role in 2019, he was "set up to fail" and that his supervisor made it his job to "waste plaintiff's time and bury him in work" and make "plaintiff's workload impossible to manage and succeed with." (Opp'n at 6.) As an initial matter, Dettori fails to point to any evidence in the record beyond his own generic and conclusory statements made during his deposition in an effort to raise a genuine question of fact as to whether his workload was more difficult than those of his peers or that supervisors and managers held him to a higher standard or set him up to fail.

Regarding his supervisor, Ryan Morosky, Dettori testified:

- "He simply piled on whatever he could make me do, time-consuming tasks that just as I would complete them and try to go back to doing what I had to do, he would have another truckload of things that he would need me to do." (Dettori Tr. at 42.)
- "[T]he stuff he was throwing at me was -- had ratcheted up. There was more criticism . . . ." (*Id.* at 112.)
- "[Y]ou've given me all these time-consuming -- the day is only so long, you know." (*Id.* at 115.)

- "They were trying to get me to quit. He was breaking my chops day after day, hour after hour on the most stupid things." (*Id*. at 350.)

However, Dettori also acknowledged several times in his deposition that he did not know whether his supervisors treated others differently:

> A. It seems to me that [Morosky] spent seven or eight hours a day just finding things that he could criticize on my work to get me to quit, and that's harassment.
>
> Q. . . . [S]ome of the things you allege, this criticism of the way you summarized documents, do you know whether he applied that same level of supervision to other people that worked for him?
>
> A. I don't know. I don't have that information. But then again -- may I? If I can expand . . .? I was a 35-year veteran. If somebody doesn't have my experience and you have to teach them stuff, that's fine, all right?

(*Id*. at 84.) Dettori thus testified that although he believed that he was subject to greater supervision, he had no information about whether others were in fact subject to a different level of supervision than he was. Similarly, in another line of questioning about instructions he received from Morosky, Dettori responded as follows:

> Q. Do you know if he suggested to other people that worked for him that they should use that template?
>
> A. According to him everybody used that template but I wouldn't know that, that's what he said.

(*Id*. at 350.) Dettori's repeated statements in deposition, that he does not know whether others received similar instruction and criticism or not, undercut his argument that he, specifically, was "set up to fail" and held to different standards than his peers.

Additionally, while Dettori raises a number of grievances with the policies that were applied to him, he does not point to any evidence in the record raising a genuine dispute of material fact as to whether GEICO failed to apply those same policies to his peers. For example, Dettori argues in his brief that he "was assigned 185 files with no authority to close files, while

performance is based upon closures." (Opp'n at 6.) However, when Dettori was asked about this topic at his deposition, he testified as follows:

> Q. And do you know whether Ryan [Morosky] was stingy, do you know whether Ryan was stingy with grabbing settlement authorities to other claims examiners, the word for him?
>
> A. I have no direct knowledge of that, no, one ever told me, he doesn't give you money to settle causes.
>
> Q. Do you have any knowledge one way or the other as to whether or not he was treated [sic] others differently with respect to settlement --
>
> A. Well, I have no independent knowledge. I never talked to the[m], regarding that or looked at anybody else's files. I don't think that's proper.
>
> Q. So you had no direct knowledge, did you have any indirect knowledge?
>
> A. Give me an example of indirect knowledge.
>
> Q. Somebody told you something in the lunchroom?
>
> A. No.
>
> Q. I don't get much authority?
>
> A. I don't have any direct or indirect knowledge that Ryan was stingy with anybody else with any settlement authority.

(Dettori Tr. at 336.) Thus, Dettori's deposition testimony reveals that he lacked any direct or indirect knowledge that Morosky, his supervisor, treated Dettori any differently in terms of being assigned more cases or not being given authority to close cases. Dettori's argument that Morosky set him up to fail in the TCR2 role is therefore unsubstantiated by even his own testimony. *See also Hicks*, 593 F.3d at 166 ("Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."). Thus, this argument boils down to an attempt to "rationalize, explain, or disagree with an employer's proffered non-

discriminatory reason[]" for terminating Dettori from the TCR2 role, which is insufficient to survive summary judgment. *Ehrbar*, 131 F. Supp. 3d at 29.

Moreover, Dettori does not dispute the underlying facts supporting GEICO's invocation of his poor performance. For example, he does not point to any evidence in the record to refute GEICO's position that he failed to adhere to company policy and standards by failing to meet the performance benchmarks for his work in the TCR2 role as set forth in the April 2021 Warning, which he was required to meet by June 2021 in order to avoid termination. *See* Pl.'s 56.1 Resp. ¶¶ 119, 123; *see also Markovich v. City of New York*, 588 F. App'x 76, 77 (2d Cir. 2015) ("While [plaintiff] established a prima facie case of discrimination, he did not dispute the accuracy of the observations reported in his negative performance reviews."); *Curtis v. Citibank, N.A.*, 70 F. App'x 20, 23 (2d Cir. 2003) ("Although it is true that a discrimination claim may be supported with only circumstantial evidence, [defendant] presents an abundance of well-documented non-discriminatory explanations for the adverse actions, and the plaintiffs concede the facts underlying these explanations."); *Cardo*, F. App'x at 23 ("While Cardo disputes the specifics of some of the incidents cited by defendants, he does not deny that these incidents occurred . . . ."); *Silver v. Entergy Nuclear Operations, Inc.*, 290 F. Supp. 3d 234, 249 (S.D.N.Y. 2017) ("It is not this Court's province to decide whether the reasons were wise, fair, or even correct, ultimately, so long as they truly were the reasons for the Plaintiff's termination.").

*2. Dettori's Successes at GEICO*

Dettori also seeks to refute GEICO's assertion of poor performance as the basis for his termination by pointing to the lengthy tenure of his employment at GEICO as well as his strengths, such as his negotiation skills. (*See* Opp'n at 2–6, 15–16.) However, the Second Circuit has recognized that, at summary judgment, even if there is evidence that a plaintiff was a "high

performer" in certain respects, the plaintiff must "marshal evidence that the decisionmakers did not believe that her performance was deficient at least in some areas based on complaints received from others . . . ." *McEvoy v. Fairfield Univ.*, 844 F. App'x 420, 421 (2d Cir. 2021) (summary order).

As an initial matter, Dettori's assertion that his "employment record 'was virtually pristine until'" approximately 2019 when he was demoted is contradicted by the record. (Opp'n at 14.) Dettori had been on four Performance Improvement Plans in the years prior to his demotion in 2019, and had received direct feedback on areas for improvement. *See* Factual Background Section II *supra*. Although Dettori maintains that he met all of the requirements of these PIPs, it is inaccurate to characterize Dettori's record as "virtually pristine" even when viewing the record in the light most favorable to Dettori and drawing all inferences in his favor.

Furthermore, even accepting Dettori's position that he demonstrated strong negotiation skills while at GEICO and that his promotions from 1986 through 1994 demonstrate positive performance, the record does not raise a material question of fact as to whether his supervisors and managers terminated his employment because of his age rather than the failure to improve his performance and meet benchmarks set in the April 2021 Warning by June 2021. *See* April 15, 2021 Warning; Booth and Felice Emails; *see also Ferrara*, 2024 WL 485742, at *3 ("Although [plaintiff] asserts that he had received several accolades and commendations for his performance since 2013, the record shows that year-over-year contemporaneous performance appraisals and employee counseling reports show that sales production in Ferrara's district was consistently below expectations from 2014 until his demotion, with the exception of one January 2016 performance appraisal.").

Moreover, the evidence of positive performance cited by Dettori long precedes his performance in the TCR2 role from 2019 to 2021. Much of the evidence to which Dettori points, including his promotions from 1984 through 1994, a 1994 performance rating of 101%, and a 1997 letter of perfect attendance, concerns his performance more than two decades before he worked in the TCR2 role from 2019 to 2021. (*See* Opp'n at 2–3; 1994 Review, ECF No. 43-11; 1997 Attendance Letter, ECF No. 43-12.)[17] Although Dettori cites a positive negotiation score in 2019, neither this score, nor indicia of Dettori's positive performance in roles prior to the TCR2 role raise a genuine dispute as to whether GEICO's proffered reason for his termination was so unfounded that a reasonable jury could conclude that it was not GEICO's true reason, but rather pretext. *See Fleming*, 644 F. Supp. 2d at 266. Finally, Dettori does not point to any evidence of positive performance in any aspects of his work in the TCR2 role in the months leading up to his termination. (*See generally* Opp'n; Pl.'s 56.1 Resp.)

*3. Alleged Indicia of Age-Related Bias*

In further support of his assertions that he was terminated because of his age, Dettori points to manager Kathy Asmus' remark in 2018 that "the old ways no longer apply to your job," which she made while Dettori was a CU Level 3 Examiner. (*See* Opp'n at 5–6.) Dettori contends that Asmus made this statement in the context of his subsequent demotion to the TCR2 position. (*Id.*) However, Dettori fails to show how this remark, understood in its full context, creates a material question of fact as to whether age was the but-for cause of his termination from the TCR2 role. Nor does Dettori present "other indicia of discrimination" such that the question of

[17] Dettori additionally asserts that "in November 2019 his supervisor [wrote] him a love letter in reference to his job application for the arbitration hearing specialist, fawning over how amazing of an employee plaintiff is," but fails to identify where such a letter is located in the record. (Opp'n at 15–16; *see* Pl.'s 56.1 Resp.; ECF No. 43.)

whether this remark is probative of bias would be reserved for the jury. *See Banks*, 81 F.4th at 266 (recognizing that when accompanied by "other indicia of discrimination" the stray remarks of a decisionmaker may create a material question of fact for the jury).

First, by Dettori's own account of the 2018 conversation with Asmus, Asmus made her remark directly in response to Dettori's statement that he had "worked at this [company] for over 30 years, and [had] never received a non-satisfactory for being one day late on diary." (Dettori Tr. at 50.) In other words, Dettori was challenging the application of a GEICO policy concerning the evaluation of his performance based on the metric of whether he reported on case files during each 30-day period. (*See id.*) In this context, Asmus' statement that "the old ways no longer apply to your job" is only reasonably understood as referring to the evolution of procedures and practices at GEICO, rather than Dettori's age.

Second, even assuming that a reasonable jury could conclude that Asmus' statement conveys age-based animus, the statement is insufficient to raise a material question of fact as to pretext. "Stray age-related remarks are insufficient to raise an inference of discriminatory motive unless they '(1) [were] made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021); *see also Deitrick v. Inwood Farms, LLC*, No. 22-cv-9466, 2026 WL 879158, at *8 (S.D.N.Y. Mar. 31, 2026) ("But even assuming Plaintiff's [evidence] is sufficient to create a genuine factual dispute, [the supervisor's] alleged remark still does not support a reasonable inference of pretext."). Asmus' statement does not satisfy any of these criteria. Dettori does not claim that he "repeatedly" received similar comments and no evidence in the record suggests that he did. (*See* Opp'n at 14.) The statement does not "[draw] a direct link"

between age-related stereotypes and the decision to terminate Dettori's employment because (1) in context, it refers to former practices at GEICO, not Dettori's age, and (2) it was made when Dettori served in a different role—that of a CU Level 3 examiner—and around two and a half years before he was terminated from the TCR2 role. *See Lively*, 6 F.4th at 306–307 (affirming district court's finding that "[t]he gap between [the employer's] alleged comment[s] and the subsequent termination is significant because stray remarks are rarely given great weight, particularly if they were made temporally remote from the date of the decision" and noting that the comments "occurred five and ten months before [plaintiff's] termination"). Finally, as GEICO points out, there is no evidence in the record that Asmus—who was the supervisor of Dettori's supervisor back in 2018 when he was a CU Level 3 Examiner—"played a substantial role in the decision to terminate" Dettori from the TCR2 role, nor does Dettori argue that she did. *Lively*, 6 F.4th at 306; *see also* Pl.'s 56.1 Resp. ¶ 26; Opp'n at 14. Asmus is not included in the email correspondence discussing Dettori's termination, and the recommendation to terminate Dettori came from Angela Booth—not Asmus. (*See* Booth and Felice Emails.) Nor is there any evidence in the record that Asmus supervised Dettori or evaluated his performance in the TCR2 role. (*See* Pl.'s 56.1 Resp. ¶¶ 26, 82.)

Third, Dettori's opposition brief also references a statement made by an unnamed supervisor who allegedly told him around the time of his May 2019 demotion from the CU Level 3 examiner to the TCR2 position, "Pete it's done! Quite frankly I thought you would have put in for your retirement by now." (Opp'n at 15.) Dettori provides no evidence to support the assertion that a supervisor made such a statement to him in his brief or his Counterstatement to GEICO's

Rule 56.1 Statement of Material Facts. (*See* Opp'n at 15; Pl.'s 56.1 Resp.)[18] Therefore, the Court need not consider it.

Fourth, Dettori's reliance on a GEICO chart identifying the "Associate Population Breakdown by age as of September 2017" similarly fails to raise a genuine dispute as to whether age was the but-for cause of his 2021 termination four years later. (*See* Opp'n at 3–4; 2017 GEICO Associate Age Chart.) As noted, not only is the chart merely descriptive, Dettori fails to provide any facts showing how the chart was used or is connected to his termination. (*See id.*)

Accordingly, viewing the entire record in the light most favorable to Dettori and drawing all inferences in his favor, none of the evidence proffered by Dettori as indicative of a desire to push out older employees raises a material question of fact as to whether age was the but-for cause of the termination of his employment in the TCR2 role.

*4. Sleep Apnea*

Dettori maintains that GEICO "claims for the first time in this litigation that its actions were justified due to plaintiff's sleep apnea," and that this purported "change in reasoning . . . further demonstrates pretext." (Opp'n at 2.)

GEICO's discussion of Dettori's sleep apnea does not demonstrate any "change in reasoning" about why it terminated Dettori. Rather, it supplements GEICO's argument that

---

[18] It is Dettori's responsibility to provide evidentiary support for his contentions. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). As the Second Circuit has held, "To defeat summary judgment . . . nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and they "may not rely on conclusory allegations or unsubstantiated speculation." *Id*. Despite his failure to provide such evidence, the Court has read the entire transcript of his deposition and has not located any testimony by Dettori that an unnamed supervisor made the alleged statement to him at around the time of his May 2019 demotion to the TCR2 role. (*See* Dettori Trs.)

Dettori's employment was terminated for poor performance. (*See* Mot. at 21 ("GEICO's position has not changed – any adverse action is directly related to Plaintiff's poor performance.").)[19] GEICO's discovery and deposition questions, for example, explore whether Dettori's condition of sleep apnea affected his job performance beginning in 2018. For example, GEICO questioned Dettori about whether he believed sleep apnea affected his performance at GEICO. (*See, e.g.*, Dettori Tr. at 27 ("Q: So you're alleging, or you believe that this severe sleep apnea affected your performance?").) Similarly, GEICO questioned Dr. Lown, who diagnosed Dettori with sleep apnea in around 2018: "Would your examination of him in 2019 and 2020 be consistent with testimony by him that he believed the severe sleep apnea affected his job performance?" (Lown Tr. at 67.) Thus, long before moving for summary judgment, GEICO explored whether sleep apnea was related to Dettori's performance in the CU Level 3 Examiner and TCR2 positions.

Accordingly, Dettori has not shown that GEICO has changed its position that Dettori was terminated from the TCR2 position due to poor performance, much less that any change raises a genuine dispute of material fact as to whether the termination of his employment "would not have occurred" but-for his age. *Ehrbar*, 131 F. Supp. 3d at 29.

***

Therefore, for all of the reasons stated above, Dettori has failed to meet his burden to identify evidence giving rise to a genuine dispute of material fact as to whether age was a but-for cause of GEICO's decision to terminate his employment in the TCR2 role.

---

[19] As a threshold matter, Dettori fails to explain when GEICO purportedly did not connect sleep apnea to its assertion that Dettori's poor performance was the basis for GEICO's termination of his employment. (*See* Opp'n at 2, 19.)

### *ii. April 2021 Failure to Hire for CSR Role and June 2021 Failure to Promote to Senior Examiner*

Similarly, none of the arguments raised by Dettori in an attempt to demonstrate pretext presents any genuine dispute of material fact as to whether age was a but-for cause of GEICO's failure to hire him for the CSR position in around April 2021 or failure to promote him to the Senior Examiner position in around June 2021.

First, for the reasons explained above, Dettori has failed to marshal *any* evidence to support a material question of fact as to whether his assignments were actually more difficult than those of others, and whether he was subject to different supervision standards than those of his peers. *See* Discussion Section I.C.i.1 *supra*. Thus, Dettori's failure to provide any substantiation for his contention that he was set up to fail with more voluminous and difficult work fails to raise a material question as to whether GEICO failed to hire him as a CSR in around April 2021 or to promote him to Senior Examiner in June 2021 because of his age. In addition, even if the record were to raise a question of fact as to whether Dettori was supervised more intensively and given more challenging work with insufficient authority to close cases, such facts do not call into question GEICO's decision not to hire Dettori as a CSR due to his documented poor interview performance. *See* Discussion Section I.B.1 *supra*; *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) ("A plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision."); *Delaney*, 766 F.3d at 169 ("The condition that a plaintiff's age must be the 'but for' cause of the

adverse employment action" requires plaintiff to show "that the adverse employment action[] would not have occurred without it.").[20]

Second, Dettori's purported successes at GEICO earlier in his tenure at the company fail to raise a question of fact as to whether GEICO's reasons for not hiring him as a CSR or promoting him to Senior Examiner are pretextual. As an initial matter, as explained above, other than one positive negotiation score in 2019, Dettori's evidence of his positive performance at GEICO is confined to his promotions in 1994 or earlier, a 1994 performance rating of 101%, and a letter concerning his attendance in 1997—almost all of which took place more than two decades before the challenged adverse actions. *See* Discussion Section I.C.i.2 *supra*. Furthermore, the quality of Dettori's negotiation skills in 2019 or his work prior to 1997 has no bearing on his poor performance on the interview for the CSR position, which is GEICO's proffered reason for not hiring him into that role. Nor did any of Dettori's positive contributions have any impact on his poor performance in April 2021, which caused him to be placed on a warning and rendered him ineligible for a promotion to Senior Examiner in around June 2021. *See* Discussion Section I.B.2 *supra*.

Third, for the same reasons as explained above with respect to GEICO's decision to terminate Dettori's employment, the 2018 age-related remark by Asmus, the 2017 chart of associates ages, and the unsubstantiated remark by an unnamed supervisor in 2019 do not raise a

[20] With respect to the June 2021 failure to promote claim, Dettori appears to suggest that he would have been eligible for this promotion if he had not been set up to fail in the TCR2 role by being harshly supervised by managers and being assigned more burdensome work. (Opp'n at 6–7, 15–16.) However, as discussed above, Dettori relies solely on his own testimony for these contentions, even though he admitted that he lacks knowledge of such facts. *See* Discussion Section I.A.iv.2 *supra*. Thus, Dettori fails to raise a material question of fact as to whether GEICO's proffered reason for not promoting Dettori—his ineligibility for the role—is merely pretextual.

material question of fact as to whether age was the but-for cause of the failure to hire Dettori as a CSR or to promote him to Senior Examiner. *See* Discussion Section I.C.i.3 *supra*. In context, Asmus' remark that "the old ways no longer apply to your job" is a reference to Dettori's prior habits and practices in his role, not Dettori's age; the comment was made when Dettori served in a different role than the one he held when he was rejected for the CSR position and when he was not promoted to Senior Examiner; and was made in 2018, approximately two and a half years before the adverse actions in question. *See id*. Moreover, Dettori does not point to any evidence in the record that Asmus played any role in the decisions not to hire him for the CSR position or not to promote him. (*See generally* Opp'n; Pl.'s 56.1 Resp.) Finally, Dettori fails to substantiate the purported 2019 remark by an unnamed supervisor or to provide any explanation that would connect the 2017 chart of associates' ages to any subsequent conduct at GEICO, including the failure to hire him for the CSR role and to promote him to the Senior Examiner role. *See* Discussion Section I.B.3 *supra*.

Fourth, Dettori's sleep apnea had no bearing on the failure to hire him to the CSR position in around April 2021 or the failure to promote him in around June 2021. As an initial matter, Dettori appears to raise the sleep apnea issue only in the context of his argument that the decision to terminate him was pretextual. (*See* Opp'n at 19 n.1 ("It is instead the defendant that has switched its reasoning for plaintiff's termination during this litigation to his sleep apnea.").) Furthermore, neither side identifies any evidence suggesting that Dettori's sleep apnea is linked either (1) to his poor interview performance resulting in GEICO's decision to not hire him for the CSR position, or (2) his poor April 2021 performance resulting in the issuance of a warning and his subsequent disqualification for a promotion to Senior Examiner. (*See generally* Mot.; Opp'n.) And, for the same reasons discussed above, Dettori fails to show that any shift in GEICO's

position raises a material question as to whether GEICO's reasons for either of these two adverse actions are pretextual.

Fifth, Dettori fails to show pretext with respect to the June 2021 failure to promote claim through his attempt to challenge the existence of a GEICO policy under which employees with unsatisfactory ratings are ineligible for a promotion. (Pl.'s 56.1 Resp. ¶ 133.) GEICO has identified specific evidence of such a policy, including but not limited to the Candidate Matrix setting forth hiring manager comments, which document that Dettori was not "qualified" for the Senior Examiner position because he had received the April 2021 Warning while in the TCR2 role and that another employee was also deemed unqualified for the same reason. *See* Discussion Section I.B.2 *supra*. Dettori's reliance on his own testimony in an effort to raise a material question of fact as to whether age was the but-for cause of GEICO's failure to promote him is unsuccessful. With respect to Dettori's application for an arbitration hearing specialist position in 2019—two years before he applied for the Senior Examiner position, Dettori testified:

1. "[Director Robert Leone] told me, You were on a warning, and, you know it's company policy you can't post. Where I expressed to him, no, I was told I can, I can post now for this job. And he said to me, I'm going to have that – I'm going to have it pulled. He told me that. I got a phone call from John, that supervisor, where he said, you know, I didn't know you were on a warning, you know. You know, Your post is going to be pulled." (Dettori Tr. at 70.)

2. "Q. Did you know at the time you applied for that posting that was pulled with Mr. Leone that if you were on a warning, you couldn't post for a job?
A. I was told I could.
Q. No, I'm just asking you, did you have any information that if you had a warning, you could not post for a job?
A. No, . . . I was told I could post for it. They pushed it through.
Q. Were you told despite the fact that you have a warning, you're going to be eligible to post for this job, or was the warning never mentioned?
A. I was told this by the person who put me on the warning.
Q. And who was that?
A. Justin Koonz." (*Id*. at 74.)

Notwithstanding the hearsay issues in much of this testimony,[21] this testimony shows, at best, that Dettori was unaware of GEICO's promotion eligibility policy in 2019—when he applied for an arbitration specialist position for which supervisor "John" and Koonz told him he could apply—but that he was informed of the policy during that process. (*See* Dettori Tr. at 69–70.) Dettori testified about his knowledge of the GEICO promotion eligibility policy in 2021 as follows:

1. "[A]bout two, three weeks before they terminated me, the senior continuing unit examiner position . . . was on the post, and I posted for it. And I received a call from Jim Agnoli who told me, Pete, you're kind of on a warning, and *I think you know what the rules are regarding that*. And I said *yeah,* but it doesn't stop me from posting, I'm going to post." (*Id*. at 136 (emphasis added).)[22]

2. "Q. Why did you keep posting for jobs after they told you that you can't post if there was a warning?
A. I kept posting for jobs because -- yeah, it's a good question -- I thought that I could. They were approved. They went through. They went to those departments." (*Id*. at 137.)

Even viewing all of Dettori's testimony in the light most favorable to him, his testimony underscores that in 2021, any belief Dettori had that he could submit or "post" an application for a promotion was based on 2019 statements by one or more supervisors that were corrected shortly after Dettori's submission of an application, in light of the fact that Dettori had been given a warning.

---

[21] The Court notes that Dettori's testimony contains hearsay-within-hearsay and is not admissible, as Dettori himself points out, for the purposes that either GEICO or Dettori seeks to utilize it (for Dettori, to show that the policy was not enforced; for GEICO, to show that Dettori was informed of the policy). (*See* Pl.'s 56.1 Resp. ¶ 135.)

[22] The Court notes that some of this testimony also contains hearsay and is inadmissible for the purpose of establishing that Dettori was aware of the policy; however, this testimony is considered for the sole purpose of demonstrating Dettori's intent to apply for the position regardless of any policy.

More importantly, nothing in Dettori's testimony or the record as a whole, viewed in the light most favorable to Dettori, with all inferences drawn in his favor, calls into question GEICO's proffered reason that it did not promote him to Senior Examiner because he was ineligible due to an unsatisfactory performance and warning in the TCR2 role. Rather, at best, Dettori's testimony supports a question of fact as to whether he believed he could apply for a promotion to Senior Examiner—not that GEICO's explanation was merely pretextual. *See Bucalo*, 691 F.3d at 129 (describing plaintiff's burden "to demonstrate that the proffered reason was not the true reason for the employment decision").

Therefore, Dettori has failed to meet his burden to identify any evidence raising a genuine dispute of material fact as to whether age was the but-for cause of GEICO's failure to hire him for as a CSR in around April 2021 and failure to promote him to Senior Examiner in around June 2021.

**II. Claims under the NYSHRL**

A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, summary judgment is granted to GEICO on Dettori's ADEA claims, which are the only federal claims in this action. The Amended Complaint does not assert any independent basis for this Court's jurisdiction over the NYSHRL claims, such as diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Compl. ¶¶ 3–6.) Accordingly, the Court declines to exercise supplemental jurisdiction over the NYSHRL claim under 28 U.S.C. § 1367(c)(3). *Chinniah*, 62 F.4th at 703;

*see also Tang v. Grossman*, No. 22-464, 2023 WL 2229366, at *3 (2d Cir. Feb. 27, 2023) (summary order) (noting that a district court declining to exercise supplemental jurisdiction "is the proper outcome when a court has dismissed all claims 'over which it has original jurisdiction'"); *Ehrbar*, 131 F. Supp. 3d at 37 (declining to exercise supplemental jurisdiction over NYSHRL claim after dismissing plaintiff's claims under the ADEA); *Meyer v. State of New York Off. of Mental Health*, 174 F. Supp. 3d 673, 695–96 (E.D.N.Y. 2016), *aff'd sub nom. Meyer v. New York State Off. of Mental Health*, 679 F. App'x 89 (2d Cir. 2017) (same).

**CONCLUSION**

For the reasons set forth above, summary judgment is granted to GEICO on Dettori's ADEA claims. Because the Court declines to exercise supplemental jurisdiction over Dettori's remaining New York State Human Rights Law claims under 28 U.S.C. § 1367(c)(3), those claims are dismissed without prejudice. The Clerk of Court is directed to enter Judgment and close the case.

Dated: Central Islip, New York
September 4, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge